

FILED & JUDGMENT ENTERED
Steven T. Salata

December 19 2019

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

*George R Hodges*
George R. Hodges
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### Asheville Division

IN RE:

SMOKY MOUNTAIN COUNTRY CLUB
PROPERTY OWNERS' ASSOCIATION,
INC.

       Debtor.[1]

Chapter 11

Case No. 19-10286

## ORDER CONFIRMING PLAN OF REORGANIZATION OF SMOKY MOUNTAIN COUNTRY CLUB PROPERTY OWNERS' ASSOCIATION, INC., AND CREDITOR SMCC CLUBHOUSE, LLC

Upon consideration of the Amended Plan of Reorganization of Smoky Mountain Country Club Property Owners' Association, Inc., and Creditor SMCC Clubhouse, LLC, filed by Smoky Mountain Country Club Property Owners' Association, Inc., (the "Debtor") and SMCC Clubhouse, LLC, ("SMCC Clubhouse") on December 17, 2019, [Docket No. 253] (as modified and supplemented herein, the "Plan")[2]; the Disclosure Statement for the Plan [Docket No. 104] (as amended, the "Disclosure Statement"), approved by the Bankruptcy Court and transmitted to

---

[1] Debtor is the following entity (the last four digits of its employer identification number follow in parentheses): Smoky Mountain Country Club Property Owners' Association, Inc., (1897). The Debtor's address is 2602 Hendersonville Road, Arden, NC, 28704.

[2] Any capitalized term used, but not defined herein, shall have the meaning ascribed to it in the Plan.

the Debtor's creditors and other parties-in-interest in accordance with the Order Approving

Disclosure Statement and Fixing Time for Filing Objections to Confirmation of Plan Combined

with the Notice Thereof [Docket No. 157] (the "Disclosure Statement Order"), which, among

other things, approved the Disclosure Statement under section 1125 of title 11 of the United

States Code (the "Code"); the various Certificates of Service filed on or about November 19,

2019 and December 9, 2019, [Docket Nos. 98 and 161, respectively] regarding service of the

Plan and Disclosure Statement on Holders of Claims and Interests and other parties in interest;

the Objection to Chapter 11 Plan [Docket No. 167] and the Amended Objection to Chapter 11

Plan [Docket No. 216], filed by Ronnie C. Hedgepeth, Jr. and Shira Hedgepeth (collectively,

along with all joinders therefor, the "Hedgepeth Objection"); the Objection to Confirmation of

Plan of Reorganization of Smoky Mountain Country Club Property Owners' Association, Inc.

and Creditor SMCC Clubhouse, LLC [Docket No. 217] (collectively, with all joinders thereto,

the "Young Objection"); the Objection to Confirmation of Plan of Reorganization of Smoky

Mountain Country Club Property Owners' Association, Inc. and Creditor SMCC Clubhouse,

LLC filed by the Office of the United States Bankruptcy Administrator for the Western District

of North Carolina [Docket No. 217] (the "BA Objection"); the Declaration of Terrance Walters

in Support of Confirmation of Plan of Reorganization Filed by Debtor and Creditor SMCC

Clubhouse, LLC, [Docket No. 235] (the "Walters Declaration") filed on December 16, 2019; the

Debtor's Brief in Support of Confirmation of Plan of Reorganization and Reply to Objections

[Docket No. 234] (the "Reply in Support") filed on December 16, 2019; and a hearing having

been held before this Court on December 18, 2019, the "Confirmation Hearing") to consider

confirmation of the Plan; and due notice of the Confirmation Hearing having been given to all

parties in interest in accordance with the Disclosure Statement Order; and the appearance of all

interested parties having been noted on the record; and based upon the evidence offered at the

Confirmation Hearing, upon the entire record of the Chapter 11 Case and upon all of the

proceedings held before the Bankruptcy Court; and after due deliberation;[3]

THE BANKRUPTCY COURT FINDS AND CONCLUDES THAT:

A.     Exclusive Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157(b)(2) and

1334(a)). The Bankruptcy Court has jurisdiction over the Chapter 11 Case pursuant to 28 U.S.C.

§ 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. Confirmation of the Plan is a

core proceeding under 28 U.S.C. § 157(b)(2), and the Bankruptcy Court has exclusive

jurisdiction to determine whether the Plan complies with the applicable provisions of the Code

and should be confirmed.

B.     Judicial Notice. The Bankruptcy Court takes judicial notice of the docket of the

Chapter 11 Case maintained by the Clerk of the Bankruptcy Court, including, without limitation,

all pleadings and other documents filed including exhibits thereto, all orders entered, and all

evidence and arguments made, proffered or adduced at the hearings held before the Bankruptcy

Court during the pendency of the Chapter 11 Case.

C.     Bar Date. Pursuant to Notice of Chapter 11 Bankruptcy Case [Docket No. 3], the

deadline to file proofs of claim in this Chapter 11 Case was December 11, 2019 (the "Bar Date").

D.     Order Approving the Disclosure Statement. The Bankruptcy Court entered the

Disclosure Statement Order that, among other things, approved the Disclosure Statement as

containing adequate information within the meaning of section 1125(a) of the Code.

E.     Disclosure Statement Order. The Disclosure Statement Order also, among other

things, (i) fixed Wednesday, December 18, 2019, at 9:30 a.m. (ET) as the date for the

---

[3] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as finding of facts when appropriate. See Fed. R. Bankr. P. 7052.

commencement of the Confirmation Hearing and (ii) fixed Friday, December 13, 2019 at 4:30 p.m. (ET), as the last date and time for filing and serving objections to confirmation of the Plan (the "Plan Objection Deadline").

F.     Transmittal of Plan and Disclosure Statement. The Plan was transmitted to all Holders of Claims and Interests on November 19, 2019 [Docket No. 98]. The Disclosure Statement and Disclosure Statement Order were transmitted to all Holders of Claims and Interests on in accordance with Bankruptcy Rule 3017(d) on December 9, 2019 [Docket No. 161]

G.     Transmittal and Mailing of Materials; Notice. Adequate and sufficient notice of the Disclosure Statement, the Plan and the Disclosure Statement Order, including the other deadlines and hearings described in the Disclosure Statement Order was given in compliance with the Code, the Bankruptcy Rules and the Disclosure Statement Order, and no other or further notice is or shall be required.

H.     Solicitation. Because no class of claims is impaired by the Plan, solicitation of the Plan was not conducted nor required. Furthermore, SMCC Clubhouse as a Plan proponent is deemed to accept the Plan as such Plan proponent.

I.     Ballots. Because no solicitation occurred, no ballots were transmitted.

J.     Impaired Classes Voting to Accept the Plan. All Classes of Claims and Interests held by Creditors and Interest Holders who are not Plan proponents are unimpaired and deemed to accept the Plan pursuant to the requirements of sections 1124 and 1126 of the Code. SMCC Clubhouse holds a Claim that is impaired under the Plan, but as a Plan proponent, SMCC Clubhouse is deemed to accept the Plan. Therefore, at least one (1) Class of Claims or Interests that is impaired under the Plan has accepted the Plan (determined without including any

acceptances of the Plan by any insider), thus satisfying the requirements of section 1129(a)(10) of the Code.

      K.    <u>Burden of Proof</u>. The Debtor and SMCC Clubhouse, as proponents of the Plan, have met their burden of proving the elements of section 1129(a) of the Code by a preponderance of evidence, which is the applicable evidentiary standard.

      L.    <u>Plan Compliance with Code (11 U.S.C. § 1129(a)(1))</u>. The Plan complies with the applicable provisions of the Code, thereby satisfying section 1129(a)(1) of the Code.

      a.    <u>Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1))</u>. Article IV of the Plan designates Classes of Claims and Interests for the Debtor. The Claims and Interests placed in each Class are substantially similar to other Claims or Interests as the case may be in each such Class. Valid business, factual and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, and such Classes do not unfairly discriminate between holders of Claims or Interests. Thus, the Plan satisfies sections 1122 and 1123(a)(1) of the Code.

      b.    <u>Specification of Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3))</u>. Article IV of the Plan specifies the Classes of Claims that are unimpaired. Thus, the Plan satisfies section 1123(a)(2) of the Code.

      c.    <u>Specification of Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3))</u>. Article IV of the Plan specifies the Classes of Claims and Interests that are impaired under the Plan. Article IV of the Plan specifies the treatment of Claims and Interests in all such Classes. Thus, the Plan satisfies section 1123(a)(3) of the Code.

      d.    <u>No Discrimination (11 U.S.C. § 1123(a)(4))</u>. The Plan provides for the same treatment by the Debtor for each Claim or Interest in each respective Class unless

the holder of a particular Claim or Interest has agreed to less favorable treatment with respect to such Claim or Interest. Thus, the Plan satisfies section 1123(a)(4) of the Code.

    e.    <u>Implementation of Plan (11 U.S.C. § 1123(a)(5))</u>. The Plan provides adequate and proper means for implementation of the Plan, including without limitation as described in Article VII of the Plan. Thus, the Plan satisfies section 1123(a)(5) of the Code. Without limitation, the Court finds that the Debtor and Reorganized Debtor would be likely to succeed in any litigation challenging the right to assess Members for amounts required to be paid to SMCC Clubhouse under the Plan in satisfaction of the Judgment pursuant to the Declaration and the North Carolina Planned Community Act (N.<u>C.G.S. § 47F-1-101</u> et al.), as follows:

    i.    Under Article III, Section 2(2) of the Declaration, the Debtor has the authority to assess Members for Clubhouse Dues, which, of necessity, includes the authority to assess Members for payment of the Judgment for the nonpayment of Clubhouse Dues. In order to collect a debt from a delinquent debtor, the creditor must collect on a judgment obtained for nonpayment of the debt, and thus, the authority of the Debtor to assess Members for and collect Clubhouse Dues includes the authority of the Debtor to assess Members for and collect amounts necessary to pay the Judgment which was obtained for nonpayment of Clubhouse Dues.

    ii.    In addition to the authority under the Declaration for the Debtor to assess Members and collect the Judgment pro rata from each Owner, the same

authority was granted to the Debtor by, at least, the following provisions of the North Carolina Planned Community Act:

(1)  N.C. Gen. Stat. §47 F-3-102(2) provides that an association may "collect assessments for common expenses from lot owners."  "Common expenses means expenditures made by or financial liabilities of the association, together with any allocations to reserves." N.C. Gen. Stat. §47 F-1-103(5).  The Judgment is a financial liability of the Debtor and is therefore a "common expense" for which the Debtor has the authority to assess and collect from the Owners.

(2)  N.C. Gen. Stat. §47 F-3-115 provides that "Assessments to pay a judgment against the association may be made only against the lots in the planned community at the time the judgment was entered, in proportion to their common expense liabilities."

(3)  N.C. Gen. Stat. §47 F-3-102(10) provides that an association may "(i)mpose and receive any payments, fees, or charges for the use, rental, or operation of the common elements other than the limited common elements and for services provided to lot owners."  The North Carolina Court of Appeals held that SMCC Clubhouse's role of providing access to and maintaining the Clubhouse Use Facilities is a "service" under N.C. Gen. Stat. §47 F-3-102(10) for which the Debtor is required and authorized to

assess, bill and collect Clubhouse Dues for payment to SMCC Clubhouse. Thus, the Judgment is a "payment" that the Debtor may "impose and receive" for the "service" providing the Clubhouse Use Facilities. *Conleys Creek Limited Partnership v. Smoky Mountain Country Club Property Owners Association, Inc.*, 255 N.C. App. 236, 805 S.E. 2d 147 (2017), disc. rev. denied, 370 N.C. 695, 811 S.E. 2d 596 (2018).

iii.    Further, the Debtor may "[i]nstitute, defend, or intervene… in litigation… on matters affecting the planned community." N.C.G.S. §47F-3-102(4). Additionally, the Debtor may "make contracts and incur liabilities." N.C.G.S. §47F-3-102(5). As the Debtor has the power to sue and be sued, and enter into contracts and incur liabilities, it must have the power and authority to assess its Members to pay any such liabilities and judgments against the Debtor arising out of such litigation and contracts.

iv.    The Debtor and Reorganized Debtor are not required to make a Special Assessment under Article 1, Section 30 of the Declaration or otherwise, because independent authority to assess Members for amounts required for the Debtor or Reorganized Debtor to pay SMCC Clubhouse in satisfaction of the Judgment exists under the Declaration and the North Carolina Planned Community Act, as set

{00332195 v 7 } 8

forth above, and Article 1, Section 30 of the Declaration is not applicable to payment of the Judgment under the Plan.

Additionally, the changes to the Plan, as set forth in Paragraph 3 of this Order, below, substantially enhance the prospect of success for the Plan, as it eliminates the potential that non-payment of assessments by Members could result in a default under Section 4.4.6 of the Plan.

      f.     <u>Prohibition against Issuance of Non-Voting Equity Securities and Provisions for Voting Power of Classes of Securities (11 U.S.C. § 1123(a)(6))</u>. Pursuant to Section 8.2 of the Plan, the Articles of Incorporation for the Reorganized Debtor shall prohibit the issuance of non-voting stock in the Reorganized Debtor. Thus, the Plan satisfies section 1123(a)(6) of the Code.

      g.     <u>Selection of Designated Officers (11 U.S.C. § 1123(a)(7))</u>. Throughout the Plan, the Debtor has adequately disclosed the identity of the individuals proposed to serve on or after the Effective Date as the officers and directors of the Reorganized Debtor. The appointment of these is consistent with the interests of the holders of Claims and with public policy. Thus, section 1123(a)(7) of the Code is satisfied.

      h.     <u>Additional Plan Provisions (11 U.S.C. § 1123(b))</u>. The Plan's provisions are appropriate and consistent with the applicable provisions of the Code, including, without limitation, provisions for (a) distributions to holders of Allowed Claims, (b) the disposition of executory contracts and unexpired leases, (c) resolution of Disputed Claims, (d) allowance or disallowance of Claims, (e) exculpation of various persons as set forth in the Plan and (f) the various injunctions set forth in the Plan.

{00332195 v 7 }9

1. Specifically, the compromise and settlement between the Debtor and SMCC Clubhouse of the litigation and disputes over the Judgment set forth in the Plan is fair and reasonable. The settlement falls within the reasonable range of litigation possibilities and therefore should be approved. The likelihood of success in litigation over payment of the Judgment, both through the Appeal and through this Chapter 11 Case, is uncertain at best, particularly in light of the evidence that appellate counsel to the Debtor estimated a thirty to forty percent chance of success on the Appeal, and would likely take a year or more to complete. Even if the Appeal were successful, the litigation with SMCC Clubhouse would be remanded to the trial court for further proceedings on breach and/or damages, with uncertain results. The settlement with SMCC Clubhouse provides a benefit to the Debtor and Reorganized Debtor by providing a structure through which the Judgment can be paid over an extended period of time. Evidence presented at the Confirmation Hearing demonstrates that the payments to be made to SMCC Clubhouse do not represent a premium over the Judgment amount. Additionally, there is uncertainty and risk to the Debtor regarding the outcome of the various potential disputes with SMCC Clubhouse in the Chapter 11 Case, including the Debtor's ability to confirm a plan of reorganization over SMCC Clubhouse's objection. Further

litigation in this Chapter 11 Case, the Appeal and any subsequent proceedings on remand are likely to be complex, time consuming and expensive. Therefore, the Court finds the Plan, including the settlement with SMCC Clubhouse and the dismissal of the Appeal, to be fair and reasonable under the circumstances.

    i.  <u>Fed. R. Bankr. P. 3016(a)</u>. The Plan is dated and identifies the entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).

    j.  <u>Fed R. Bankr. P. 3016(c)</u>. The Plan describes in specific and conspicuous language all acts to be enjoyed that are not otherwise enjoined under the Code and entities that would be subject to the injunction under the Plan, thereby satisfying Bankruptcy Rule 3016(c).

   M.  <u>Proponents' Compliance with Code (11 U.S.C. § 1129(a)(2))</u>. Except as otherwise provided or permitted by orders of the Bankruptcy Court, the Debtor has complied with all applicable provisions of the Code, the Bankruptcy Rules, the Disclosure Statement Order, and other orders of this Bankruptcy Court thereby satisfying section 1129(a)(2) of the Code. Specifically, the Debtor is a proper debtor under section 109 of the Code and is a proper proponent of the Plan along with SMCC Clubhouse under section 1121 of the Code.

   N.  <u>Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>. The Debtor and SMCC Clubhouse have proposed the Plan in good faith and not by any means forbidden by law and this Confirmation Order was not procured by fraud, thereby satisfying section 1129(a)(3) of the Code. In determining that the Plan has been proposed in good faith, the Bankruptcy Court has considered the evidence and exhibits at the confirmation hearing, has examined the totality of the circumstances surrounding the filing of the Chapter 11 Case, the formulation of the Plan and all

modifications thereto. The Debtor's Board of Directors acted with due care and engaged in a reasonable inquiry of the Debtor's prospects for success in further litigation with SMCC Clubhouse and weighed appropriate considerations in deciding between continued litigation both in this Chapter 11 Case and the Appeal, or agreeing to the settlement with SMCC Clubhouse set forth in the Plan. The Debtor's settlement with SMCC Clubhouse embodied in the Plan was negotiated in good faith, at arms' length, and represents a good-faith compromise of many disputed issues. The Chapter 11 Case was filed and the Plan was proposed, with the legitimate and honest purpose of reorganizing and maximizing the value of the Debtor's Estate and the recovery to holders of Allowed Claims. Further, the Plan is not proposed by any means forbidden by law. As set forth in Section L(e), above, it appears to the Court that the Debtor and Reorganized Debtor have the authority to assess Members for payments required under the Plan to SMCC Clubhouse in satisfaction of the Judgment.

O. <u>Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))</u>. Any payment made or to be made by the Debtor for services or for costs and expenses in connection with the Chapter 11 Case prior to the Confirmation Date, including administrative expense and substantial contribution claims under sections 503 and 507 of the Code, or in connection with the Plan and incident to the Chapter 11 Case, either has been approved by or is subject to the approval of the Bankruptcy Court as reasonable, thereby satisfying section 1129(a)(4) of the Code.

P. <u>Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5))</u>. The Debtor has complied with section 1129(a)(5) of the Code and has disclosed the identity of the board of directors and officers of the Debtor. The appointment of the board of directors and officers is consistent with the interests of holders of Claims and with public policy.

Q.      No Rate Changes (11 U.S.C. § 1129(a)(6)). Section 1129(a)(6) of the Code is not applicable to the Debtor.

R.      Best Interests Test (11 U.S.C. § 1129(a)(7)). The Plan satisfies section 1129(a)(7) of the Code as all Holders of Impaired Allowed Claims have accepted the Plan.

S.      Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)). Administrative Claims and Priority Tax Claims are not classified in the Plan. Classes 1, 2, 3, and 5 are unimpaired by the Plan, and, under section 1126(f) of the Code, are conclusively presumed to have accepted the Plan. Class 4 is impaired under the Plan, and Class 4 is deemed to accept the Plan because SMCC Clubhouse is a Plan proponent.

T.      Treatment of Administrative and Priority Claims (11 U.S.C. § 1129(a)(9)). The treatment of Administrative Claims, Priority Non-Tax Claims and Secured Tax Claims under the Plan satisfies the requirements of section 1129(a)(9)(A-D) of the Code, and the treatment of Priority Tax Claims under the Plan satisfies the requirements of section 1129(a)(9)C of the Code.

U.      Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10)). Class 4 in the Chapter 11 Case is the Impaired Class of Claims that has accepted the Plan because the sole member of Class 4, SMCC Clubhouse, is a Plan proponent.

V.      Feasibility (11 U.S.C. § 11129(a)(11)). Section 1129(a)(11) of the Code is satisfied by the Plan and confirmation of the Plan is not likely to be followed by a chapter 7 liquidation of the Debtor. The Disclosure Statement and the evidence and exhibits proffered or adduced at the Confirmation Hearing (1) are persuasive and credible, (2) have not been controverted by other evidence and (3) establish that the Plan is feasible. The Court is not required to find that the Plan is guaranteed to succeed in order to find that it is feasible, only that

it presents a realistic, workable framework. *See In re American Capital Equipment, LLC*, <u>688 F.3d 145, 156</u> (3d. Cir. 2012). The Court finds that the Debtor is likely to prevail in any litigation regarding its right to assess its Members for the payments required under the Plan, including, without limitation the payments required to be made to SMCC Clubhouse for the reasons set forth in Section L(e), above. Under the North Carolina Planned Community Act, N.<u>C. Gen. Stat. § 47F-3-116</u>, the Debtor has the right to foreclose by power of sale on the Member's property if an assessment is not paid. Without confirmation of the Plan, each Member would be assessed at least $45,000 to pay his pro rata share of the Judgment, and, upon confirmation of the Plan, each Member would, in addition to paying Clubhouse Dues, be assessed three annual installments of $3,066.67. The Court finds it more likely that Members will prefer to pay the assessments of $3,066.67 under the Plan, rather than paying a lump sum assessment of at least $45,000 to pay the Judgment without confirmation of the Plan. Further, the Debtor's right to assess and assert a lien against Members' property in the Smoky Mountain Country Club provides further motivation for Members to pay the assessments required for the Debtor to perform its obligations to SMCC Clubhouse under the Plan. Additionally, the changes to the Plan, as set forth in Paragraph 3 of this Order, below, substantially enhance the prospect of success for the Plan, as it eliminates the potential that non-payment of assessments by Members could result in a default under Section 4.4.6 of the Plan.

W. <u>Payment of Fees (11 U.S.C. § 1129(a)(12))</u>. The Debtor has paid or will pay, on the Effective Date, or as soon thereafter as practicable, all fees due and payable under <u>28 U.S.C. § 1930</u>, thereby satisfying section 1129(a)(12) of the Code. The Debtor shall continue to file quarterly reports and pay all fees due and payable under <u>28 U.S.C. § 1930</u> until the closing of the Chapter 11 Case.

X.    Miscellaneous Provisions (11 U.S.C. §§ 1129(a)(13)-(15)). Sections 1129(a)(13)-(16) are inapplicable as the Debtor (i) does not provide retiree benefits as defined in section 1123 of the Code; (ii) has no domestic support obligations; and (iii) is not an individual.

Y.    Miscellaneous Provisions (11 U.S.C. § 1129(a)(16). Pursuant to section 1129(a)(16), all transfers of property under the Plan will be made in accordance with any applicable provision of nonbankruptcy law that governs the transfer of property by a corporation that is not a moneyed, business or commercial corporation. All transfers to be made under the Plan comply with applicable non-bankruptcy law governing non-profit corporation.

Z.    Principal Purpose of Plan (11 U.S.C. § 1129(d)). The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933 (15 U.S.C. § 77e).

AA.    Good Faith Solicitation (11 U.S.C. § 1125(e)). No votes accepting or rejecting the Plan were solicited.

BB.    Rejection and Assumption of Executory Contracts and Unexpired Leases. The Debtor has exercised reasonable business judgment in determining whether to assume or reject executory contracts and unexpired leases as set forth in Article V of the Plan. Each assumption or rejection of an executory contract or unexpired lease pursuant to the Plan and assignment, if any, shall be legal, valid and binding upon the Debtor and its assignees or successors and all non-Debtor parties to such executory contract or unexpired lease, all to the same extent as if such assumption or rejection had been effectuated pursuant to an appropriate Final Order of the Bankruptcy Court entered before the Confirmation Date under section 365 of the Code.

CC.    Retention of Jurisdiction. The Bankruptcy Court properly may retain jurisdiction over the matters set forth in the Plan, including, without limitation, Section 11.1 of the Plan after

the Effective Date; provided, however, that nothing in the Plan or this Confirmation Order shall be effective to expand the jurisdiction of the Bankruptcy Court following the occurrence of the Effective Date beyond that jurisdiction, which is provided for in section 1132 of the Code, 28 U.S.C. § 157 and/or 28 U.S.C. § 1334.

ACCORDINGLY, THE BANKRUPTCY COURT HEREBY ORDERS THAT:

1.      Confirmation. The Plan, as amended or modified, including all exhibits and attachments to the Plan is approved and the Plan is hereby confirmed under section 1129 of the Code. The Plan, including all terms, all exhibits and attachments of the Plan, as amended or modified, are incorporated by reference into and are an integral part of this Confirmation Order. The failure to include or specifically reference any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision.

2.      Severability. Each term and provision of the Plan is valid and enforceable pursuant to its terms.

3.      Modifications to the Plan. The following modifications to the Plan are hereby approved and incorporated into the Plan as if set forth fully therein:

a.   Section 4.4.3 of the Plan is deleted in its entirety and replaced as follows:

**4.4.3   Principal Payment on the Judgment**. The Debtor shall pay $1,500,000, to be credited against the principal sum of the Judgment, on the following schedule:

(i) $500,000 in Cash on or before January 1, 2020, or within fifteen (15) days of the Effective Date of the Plan, whichever is earlier;

(ii) $500,000 in Cash on or before January 1, 2021; and

(iii) $500,000 in Cash on or before January 1, 2022.

In order to generate income sufficient to pay SMCC Clubhouse the principal sum of $1,500,000 on the Judgment in three equal annual installments of $500,000, Debtor intends to assess each of the 163 Owners who owned a Lot, Townhouse Unit or Condominium Unit on May 31, 2019 (the "163 Owners"), the amount of $9,200.00 in three equal annual installments of $3,066.67 per property. One or more of the 163 Owners may be unable or unwilling to make the timely payment of the three installments, or any one or more of them (the "Delinquent Owners"), and in such event, Debtor does not want to be in default under Section 4.4.3 due to the inability to make the full and timely payment of one or more of the three equal annual installments of $500,000. Accordingly, Debtor and SMCC Clubhouse agree as follows:

(i) The North Carolina Planned Community Act in N.C. Gen. Stat. §47F-3-102(15) provides that "Unless the articles of incorporation or the declaration expressly provides to the contrary, the association may: . . . (15) Assign its right to future income, including the right to receive common expense assessments."

(ii) The North Carolina Planned Community Act in N.C. Gen. Stat. §47F-1-103(5) provides that "In the declaration and bylaws, unless specifically provided otherwise or the context otherwise requires, and in this Chapter: . . . (5) "Common expenses" means expenditures made by or financial liabilities of the association, together with any allocations to reserves."

(iii) Payments of the Judgment by Debtor, and the obligations of Debtor to make payments under the Plan, are common expenses, and Debtor may assign to SMCC Clubhouse its right to receive common expense assessments from the 163 Owners representing their pro rata share of the principal sum of $1,500,000 payable by Debtor on the

Judgment under this Section 4.4.3, and specifically, Debtor may assign to SMCC Clubhouse the common expense assessments to be received from the Delinquent Owners.

(iv)    Debtor shall assess and bill the 163 Owners for their pro rata share of each of the three annual installments of $500,000. The 163 Owners' pro rata share of the first installment of $500,000 has been, and is deemed to have been, assessed and billed on December 1, 2019, for payment on January 1, 2020.  The 163 Owners' pro rata share of the second installment of $500,000 shall be assessed and billed on December 1, 2020, for payment on January 1, 2021.  The 163 Owners pro rata share of the third installment of $500,000 shall be assessed and billed on December 1, 2021, for payment on January 1, 2022.

(v)    Each of the 163 Owners shall be deemed a Delinquent Owner if the assessment for his pro rata share of the $500,000 annual installment is not paid on or before the due date for payment thereof.

(vi)    Debtor hereby assigns to SMCC Clubhouse, and its successors and assigns, its right to receive each common expense assessment from each Delinquent Owner for the amount of the delinquent assessment for his pro rata share of the $500,000 annual installment.  The Debtor shall designate in writing the identity of the Delinquent Owners on or before the thirtieth day after the due date for the payment of the assessments for payments required under Section 4.4.3 of the Plan. Debtor shall execute all documents deemed necessary by SMCC Clubhouse to evidence the assignments to receive all assessments from the Delinquent Owners for their pro rata share of the $500,000 annual installment, and to collect all amounts SMCC Clubhouse is entitled to, including interest, legal fees and court costs.  SMCC shall be entitled to exercise all remedies under the North Carolina Planned Community Act that would have been available to the Debtor.

(vii)    Debtor shall not be deemed in default under its obligations to SMCC Clubhouse under Section 4.4.6 of the Plan, for nonpayment of the amount(s) of delinquent assessments by the Delinquent Owners which are assigned to SMCC Clubhouse, and SMCC Clubhouse shall bear the sole risk of collecting the delinquent assessments from the Delinquent Owners.  Only the amounts actually collected by SMCC Clubhouse shall be deemed payments on the Judgment.

b.    Section 4.4.4 of the Plan is deleted in its entirety and replaced as follows:

**4.4.4    Release of the Judgment Lien**.  When SMCC Clubhouse has been paid all amounts due under Section 4.4.1, above, it shall execute and record a release of the Judgment Lien on the Condominium Common Element. The release of the Condominium Common Element from the Judgment Lien shall not affect the validity of the Judgment or the Judgment Lien on the balance of any real property owned by the Reorganized Debtor, or the right of SMCC Clubhouse  to levy upon personal property of the Association, in the event of a future default on the obligations to SMCC Clubhouse under the Plan, subject to any applicable notice and opportunity to cure as provided in Section 4.4.6, below.

c.    Section 4.4.5 of the Plan is deleted in its entirety and replaced as follows:

**4.4.5    Intentionally omitted.**

d.    Section 8.6.1 of the Plan is deleted in its entirety and replaced as follows:

**8.6.1    Specific    Provisions    Regarding    Preserved    Causes    of    Action**. Notwithstanding the foregoing, the Reorganized Debtor shall commence litigation with respect to the Preserved Causes of Action, if at all, no later than June 30, 2020. Any such litigation with respect to the Preserved Causes of Action shall be managed by the Board of Directors of the Reorganized Debtor pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code. Any recovery of

damages, by way of settlement or judgment, by the Debtor or Reorganized Debtor arising out of litigation with respect to any Preserved Cause of Action shall be used by the Reorganized Debtor first for reimbursement (without interest) of amounts paid by any of those Owners who were assessed and paid their pro rata share of the $1,500,000 in principal payments to SMCC Clubhouse in accordance with Section 4.4.3 of the Plan.

      e.    Section 9.4 of the Plan is deleted in its entirety and replaced as follows:

      9.4    <u>Re-vesting of Assets; No Further Supervision</u>.  The assets of the Debtor and all property of the Debtor's Estate (including, without limitation, all rights of the Debtor in and to Avoidance Actions and other Causes of Action, all proceeds thereof that have not been expressly disposed of prior to the Confirmation Date), shall be preserved and re-vest in the Reorganized Debtor, in each case free and clear of all Claims and Equity Interests, but subject to the obligations of the Reorganized Debtor as specifically set forth in this Plan.  This Plan does not contain any restrictions or prohibitions on the conduct of the business of the Reorganized Debtor.  The Reorganized Debtor may use, operate and deal with its assets, and may conduct and change its business, without the need for approval of the Bankruptcy Court. Specifically, and without limitation, from and after the Effective Date, the Debtor may transfer ownership of all or any portion of the Condominium Common Elements for the beneficial interest of Owners of Condominium Units, in the Debtor's sole and absolute discretion, without need for approval of the Bankruptcy Court.

    4.    <u>Considerations Regarding Claim Amounts and Classifications</u>. The classification and allowance of Claims and Interests for purposes of the distributions to be made under the Plan shall be governed solely by the terms of the Plan. The Debtor retains all rights to contest the

amount, classification or validity of any Claim for purposes of allowance and/or distribution under the Plan, as provided in the Plan and this Confirmation Order.

5.    <u>Vesting of Assets</u>. On the Effective Date pursuant to section 1141(b) of the Code, all assets of the Debtor shall vest in the Reorganized Debtor, and such vesting: (i) is and shall be legal, valid, and effective transfers of property; (ii) shall vest the transferee with good title to such property free and clear of all Liens, Claims, encumbrances, and Interests of any Person, except as expressly provided in the Plan or the Confirmation Order; (iii) does not and shall not constitute avoidable transfers under the Code or under the applicable bankruptcy or non-bankruptcy law; and (iv) does not and shall not subject the Debtor to any liability by reason of such transfer under the Code or under applicable non-bankruptcy law, including any laws affecting successor or transferee liability. From and after the Effective Date, the Reorganized Debtor shall conduct its business and control the disposition of its assts in its sole discretion, without the need for approval of the Bankruptcy Court, including, but not limited to, Plan sections 4.4.4 and 9.4. Further, from and after the Effective Date, the Reorganized Debtor shall be permitted to pay professionals for services provided and fees and expenses incurred on and after the Confirmation Date in the ordinary course of the Debtor's business, and without the need for any such professional to file an application for approval of such fees and expenses with this Court.

6.    <u>Effects of Confirmation; Immediate Effectiveness; Successors and Assigns</u>. The Debtor is authorized to consummate the Plan after entry of this Confirmation Order. Notwithstanding any otherwise applicable law, immediately upon the entry of this Confirmation Order, the terms of the Plan, as amended or modified, (including all exhibits and attachments thereto, and all documents and agreements executed pursuant to the Plan) and this Confirmation

Order shall be binding on (a) the Debtor; (b) all holders of Claims against and Interests in the Debtor, whether or not impaired under the Plan and whether or not, if impaired, such holders accepted the Plan, (c) each Person acquiring property under the Plan, (d) any other party in interest, (e) any person making an appearance in this Chapter 11 Case, (f) any person receiving notice of the Bankruptcy Case or the Plan, and (g) each of the foregoing's respective heirs, successors, assigns, trustees, executors, administrators, affiliates, officers, directors, agents, representatives, attorneys, beneficiaries, or guardians. Upon the making of the Distributions to be made on the Effective Date or soon thereafter, the Plan shall be deemed substantially consummated under sections 1101 and 1127(b) of the Code. If any provision of this Confirmation Order is hereafter modified, vacated or reversed by subsequent order of this Court or any other court, such reversal, modification or vacation shall not affect the validity of the obligations incurred or undertaken under or in connection with the Plan prior to the Debtor's receipt of written notice of any such order, nor shall such reversal, modification or vacation hereof affect the validity or enforceability of such obligations. Notwithstanding any reversal, modification or vacation hereof, any such obligation incurred or undertaken pursuant to and in reliance on this Confirmation Order prior to the effective date of such reversal, modification or vacation shall be governed in all respects by the provisions of this Confirmation Order and the Plan, and all documents, instruments and agreements related thereto, or any amendments or modifications thereto.

7.    <u>Causes of Action and Avoidance Actions</u>. Except as expressly provided for in the Plan or this Confirmation Order, any and all Causes of Action of any kind or nature whatsoever against parties arising before the Effective Date, including, without limitation, the Preserved Causes of Action, whether known or unknown, asserted or unasserted, matured or unmatured and

regardless of whether the existence of same has been disclosed shall survive the Effective Date of the Plan and shall be preserved for the benefit of the Debtor, and shall be enforceable by the parties set forth in the Plan in the name of the Debtor or otherwise. All Causes of Action are reserved and preserved to the extent set forth in the Plan, including, without limitation, this Order and Section 8.6 of the Plan.

Confirmation of this Plan shall not be deemed res judicata or waiver or the basis for estoppel or create any defense as to the prosecution to judgment on the merits of any and all claims of the Debtor, Causes of Action by the Debtor, whether an action to prosecute such claims of the Debtor or Causes of Action are filed prior to or after confirmation of the Plan.

8.      <u>Rejection and Assumption of Executory Contracts and Unexpired Leases</u>. As of the Effective Date, except with respect to IPM, all unexpired leases of non-residential real property and other executory contracts that have not previously been assumed or rejected, are not the subject of a motion to reject pending the Confirmation Date, and were not rejected in the Plan shall be deemed assumed by the Debtor, and this Confirmation Order shall constitute an order under Section 365 of the Bankruptcy Code authorizing the approval of the assumption or rejection as the case may be of such agreements as of the Effective Date. The Debtor has previously provided notice to IPM that it is exercising its right to terminate the Debtor's management contract with IPM effective as of January 15, 2020. The IPM contract does not constitute an executory contract and need not be accepted or rejected under the Bankruptcy Code.

9.      <u>Rejection Damages Claims</u>. **If the rejection of any executory contract or unexpired lease under the Plan gives rise to a Claim by the non-Debtor party or parties to such contract or lease, such Claim, to the extent that it is timely filed and is an Allowed**

Claim, shall be classified in Class 4; **provided, however, that the Unsecured Claim arising from such rejection shall be forever barred and shall not be enforceable against the Debtor, the Reorganized Debtor, their successors or properties, unless a proof of such Claim is filed and served on the Reorganized Debtor on or before the date that is the later of (a) the Bar Date and (b) thirty (30) days after the date of the order of the Bankruptcy Court rejecting the executory contract or unexpired lease, which may include, if applicable, the Confirmation Order. Failure to comply with this deadline shall forever bar the Holder of such a Claim from seeking payment thereof.**

10.    <u>Cure Amounts</u>. Except as set forth on the Cure Schedule, attached to the Plan as Exhibit A, the amount of any cure payment, if any, that may be required in order for the Debtor to assume any Assumed Agreement shall be deemed to be $0.00. Any counterparty to an executory contract or unexpired lease is hereby barred from asserting any right to any cure amount except as set forth on the Cure Schedule or from objecting to the assumption of its executory contract or unexpired lease by the Reorganized Debtor. **Further, any Claim filed or scheduled in the Debtor's Schedules arising from an Assumed Agreement is hereby disallowed in full in the Chapter 11 Case upon payment of the cure amount, if any, set forth on the Cure Schedule or as allowed by order of the Bankruptcy Court.**

11.    <u>Insurance Policies</u>. Notwithstanding anything to the contrary in the Plan, any insurance policy in effect as of the date of the Effective Date that provides insurance coverage to the Debtor or its officers, directors or employees shall remain in effect through its expiration in accordance with the terms and conditions of such policy. To the extent that any such policies are deemed to be an executory contract, the assumption of such policies is hereby approved and the cure amount with respect thereto is $0.00.

12. <u>Compromise and Settlement</u>. Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good-faith compromise of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest. The compromises and settlements of such Claims and Interests embodied in the Plan are fair, equitable and reasonable and are in the best interests of the Debtor, the Estate, and all holders of Claims and Interests, and therefore the same should be, and are, approved. Without limitation, the agreement between the Debtor and SMCC Clubhouse embodied in Section 4.4 and Section 8.6.2 of the Plan (the "SMCC Settlement") constitutes a good-faith, arms-length compromise of the SMCC Clubhouse Claim and the Appeal, and is fair, equitable and reasonable and is in the best interests of the Debtor, the Estate, and all holders of Claims and Interests. The Court finds the Debtor's Board of Directors acted in good faith in negotiating and proposing the Plan, including the SMCC Settlement. Furthermore, the SMCC Settlement is fair, equitable, and falls within the reasonable range of litigation possibilities.

13. <u>Fairway Litigation</u>. Upon payment in full of the Allowed amount of the Claims of Fairway Oaks and CCLP as set forth in Section 4.3 of the Plan, CCLP and Fairway Oaks shall dismiss the Fairway Litigation with prejudice, including with respect to all of the Debtor's co-defendants.

14. <u>Condominium Common Elements</u>. Upon payment of all amounts due to SMCC Clubhouse under Section 4.4.1 of the Plan, as well as the first $500,000 of the amount due to SMCC Clubhouse under Section 4.4.3 of the Plan, SMCC Clubhouse shall execute and record a

{00332195 v 7 }25

release of the Judgment Lien on the Condominium Common Element. The release of the Condominium Common Element from the Judgment Lien shall not affect the validity of the Judgment or the Judgment Lien on the balance of any real property owned by the Reorganized Debtor, or the right of SMCC Clubhouse to levy upon personal property of the Association, in the event of a future default on the obligations to SMCC Clubhouse under the Plan, subject to any applicable notice and opportunity to cure as provided in Section 4.4.6, below.

Upon the release of the Judgment Lien on the Condominium Common Element, the Reorganized Debtor shall be entitled to thereafter transfer all or any portion of the Condominium Common Elements for the beneficial interest of Owners of Condominium Units, in the Debtor's sole and absolute discretion, without need for approval of the Bankruptcy Court.

15. <u>Discharge</u>. The discharge provisions set forth in the Plan, including, without limitation, Sections 9.1 and 9.2 of the Plan are hereby approved in their entirety. The consideration distributed under the Plan shall be in exchange for, and in complete satisfaction, discharge, release, and termination of all Claims of any nature whatsoever against the Estate of or the Debtor. In addition, except as otherwise provided herein or in the Plan, upon the Effective Date, the Debtor shall be deemed discharged and released pursuant to section 1141(d)(1)(A) of the Bankruptcy Code from any and all Claims, including but not limited to demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not (a) a proof of claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code; (b) a Claim based upon such debt is allowed under Section 502 of the Bankruptcy Code; or (c) the Holder of a Claim based upon such debt has accepted this Plan. This Confirmation Order shall be a judicial determination of discharge and termination of all liabilities of and all Claims against the Estate

and Debtor and all liens and security interests in the Debtor's personal property, except as otherwise specifically provided in the Plan or the Confirmation Order. The Confirmation Order shall not be a termination of the liens preserved in Section 4.4.4 of the Plan, which liens shall survive the confirmation of the Plan subject to any modification provided for in the Plan or Confirmation Order, which shall be satisfied pursuant to their terms. **On the Confirmation Date, as to every discharged Claim and other debt of the Debtor, the Holder of such Claim or other debt of the Debtor shall be permanently enjoined and precluded form asserting against the Reorganized Debtor, or against its assets or properties or transferee thereof, any other or further Claim or other debt of the Debtor based upon any document, instrument, or act, omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date <u>except</u> as expressly set forth in the Plan or this Confirmation Order.** In the event that, after the Confirmation Date, any Person asserts, against the Reorganized Debtor or any of its subsidiaries or affiliates, any right to payment or equitable remedy for breach of performance which gives rise to a right of payment, which right was not asserted prior to the Confirmation Date but is based on any act, fact, event, occurrence, or omission, by or relating to the Debtor, as the Debtor existed before the Confirmation Date, and in the further event that such right is determined by a court of competent jurisdiction not to have been discharged pursuant to the provisions of the Bankruptcy Code section 1141 and this Plan, and that such right may be asserted against the Reorganized Debtor, then, in such circumstances the holder of such right shall be entitled to receive from the Reorganized Debtor value equivalent to the value such holder would have received if such right had been asserted against the Debtor before the Confirmation Date and only to the extent such right would have been allowed or allowable as a Claim. Nothing in this or Section 9.1 of the Plan shall have the effect of excepting

from discharge any Claim that is or would be discharged pursuant to Bankruptcy Code section 1141 or this Plan.

16. <u>Exculpation</u>. The exculpation provisions set forth in the Plan, including, without limitation, Section 9.3 of the Plan are hereby approved in their entirety, except as modified herein, it appearing from the evidence adduced and proffered at the Confirmation Hearing that the Debtor, its officers, directors and professionals have acted in good faith in the negotiation and proposal of the Plan. **To the fullest extent permitted by Section 1125(e) of the Bankruptcy Code, as of the Effective Date, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from, any Exculpated Claim or any obligation, Cause of Action, or liability for any Exculpated Claim, except for actual fraud, willful misconduct, or gross negligence, and in all respects, the Exculpated Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan. The Exculpated Parties have, and upon the Confirmation Date shall be deemed to have, participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation of acceptances and rejections of the Plan and, therefore, are not and shall not be liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan.**

17. <u>Injunction</u>. The injunction provisions set forth in the Plan, including, without limitation, Section 9.5 of the Plan are hereby approved in their entirety, except as modified herein. **Confirmation of the Plan shall have the effect of, among other things, permanently enjoining all Persons who have held, hold, or may hold or have asserted, assert, or may assert Claims against or Equity Interests in the Debtor or the Reorganized Debtor against**

the Debtor, or the Reorganized Debtor, or their assets, with respect to any such Claim or Equity Interest from and after the Effective Date, from taking any of the following actions (other than actions to enforce any rights or obligations under the Plan and with respect to rights first arising after the Effective Date): (a) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including without limitation, any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting the Estate, the Debtor, the Reorganized Debtor, or any of their then existing or subsequently acquired property or assets; (b) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by an manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Estate, the Debtor, the Reorganized Debtor, or any of their then-existing or subsequently acquired property or assets; (c) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Estate, the Debtor, the Reorganized Debtor or any of their then existing or subsequently acquired property or assets; (d) asserting any right o setoff, or recoupment directly or indirectly, against any obligation due or assets of the Estate, the Debtor, the Reorganized Debtor, or any of their then existing or subsequently acquired property or assets, except as contemplated or allowed by the Plan; (e) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; and (f) prosecuting or otherwise asserting any Claim or Equity Interest, including any Cause of Action, released pursuant to the Plan.

18.     <u>Terms of Injunctions or Stays</u>. Unless otherwise provided, all injunctions or stays provided for in the Chapter 11 Case pursuant to sections 105 or 362 of the Code or otherwise in

effect on the Confirmation Date shall remain in full force and effect until the Effective Date after

which the permanent injunctions of the Plan, this Order and the Code will be given full force and

effect.

19. <u>General Authorizations</u>. The Debtor and/or the Reorganized Debtor are authorized

to execute, deliver, file, or record such contracts, instruments, notes and other agreements or

documents and take such actions as may be necessary or appropriate to effectuate, implement

and further evidence the terms and conditions of the Plan, including, without limitation,

amendments of applicable articles of incorporation, by-laws or similar documents. The Debtor,

its directors, officers, agents and attorneys are authorized and empowered to issue, execute,

deliver, file or record any agreement, document or security, and to take any action necessary or

appropriate to implement, effectuate and consummate the Plan in accordance with its terms, or to

take any or all corporate actions authorized to be taken pursuant to the Plan without further order

of the Bankruptcy Court including, without limitation, assessing Members for amounts necessary

to make payments required under the Plan to SMCC Clubhouse, and any or all such documents

shall be accepted by each of the respective state filing offices and recorded in accordance with

their terms and the provisions of state law.

20. <u>Exemption from Certain Taxes and Recording Fees</u>. Any transfer of all or any

portion of the Debtor's assets pursuant to this Plan shall constitute a "transfer under a plan"

within the purview of section 1146(c) of the Code and shall not be subject to any stamp tax or

similar tax.

21. <u>Bar Date for Certain Administrative Expense Claims</u>. **Unless otherwise ordered**

**by the Bankruptcy Court, requests for payment of Administrative Claims, including all**

**applications for final allowance of compensation and reimbursement of expenses of**

Professionals incurred before the Confirmation Date, must be filed and served on counsel for the Debtor and the Bankruptcy Administrator no later than sixty (60) days after the Effective Date. Any person required to file and serve a request for payment of an Administrative Claim who fails to timely file and serve such request shall be forever barred, estopped, and enjoined from asserting such Claim or participating in distributions under the Plan on account thereof. The Administrative Claims Bar Date shall not apply to quarterly fees owing pursuant to 28 U.S.C. § 1930, fees and expenses of Professionals incurred after the Confirmation Date, parties seeking payment of post-petition ordinary course trade obligations and amounts arising under agreements approved by the Bankruptcy Court or the Plan.

22.   Governmental Approvals not Required. This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules or regulations of any state or any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments or agreements, and any amendments or modifications thereto, and any other acts referred to in or contemplated by the Plan, the Disclosure Statement and any documents, instruments or agreements, and any amendments thereto.

23.   Reporting and Payment of Fees. The Debtor shall continue to file quarterly reports and pay all fees due and payable under 28 U.S.C. § 1930 until the closing of the Chapter 11 Case. The Debtor and/or the Reorganized Debtor shall furnish such reports as are required by the Bankruptcy Code and the Rules of Bankruptcy Procedures, the United States Bankruptcy Administrator's Guidelines and the Local Bankruptcy Rules of this Court until the Chapter 11 Case is closed.

24. <u>Retention of Jurisdiction</u>. Pursuant to sections 105(a) and 1142 of the Code, and notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction as provided in the Plan over all matters arising out of, arising in, and related to the Chapter 11 Case and the Plan to the fullest extent permitted by law, including, among other items and matters, those items and matters set forth in Article XI of the Plan.

25. <u>Filing and Recording</u>. This Confirmation Order (a) is and shall be effective as a determination that, on the Effective Date, all Claims existing prior to such date have been released, satisfied and terminated to the extent provided herein or in the Plan, and (b) is and shall be binding upon and shall govern the acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record, or release any document or instruments. Each and every federal, state, and local government agency is hereby directed to accept any and all documents and instruments necessary, useful, or appropriate (including Uniform Commercial Code financing statements) to effectuate, implement, and consummate the transactions contemplated by the Plan and this Confirmation Order and to the extent appropriate, without payment of any recording tax, stamp tax, or similar tax imposed by state or local law.

26. <u>Reference to Plan Provisions</u>. The failure to include or specifically reference any particular provision of the Plan in this Confirmation Order shall not diminish or impair the

effectiveness of such provision, it being the intent of the Bankruptcy Court that the Plan be confirmed in its entirety.

27. <u>Notices</u>. The Debtor shall serve notice of entry of this Confirmation Order and occurrence of the Effective Date in accordance with Bankruptcy Rules 2002(f)(7), 2002(k), and 3020(c); <u>provided</u>, <u>however</u>, that notice need not be given or served under the Code, the Bankruptcy Rules, or this Confirmation Order to any Person to whom the Debtor mailed a notice of the Bar Date or the Disclosure Statement Order, but received such notice returned marked "undeliverable as addressed," "moved – left no forwarding address," "forwarding order expired," or similar reason, unless the Debtor has been informed in writing by such Person of that Person's new address. The notice described herein is adequate under the particular circumstances of this Chapter 11 Case, and no other or further notice is necessary. Service of notice in accordance with this decretal paragraph shall constitute good and sufficient notice of the Administrative Claims Bar Date, and no other or further notice of such bar ate shall be required.

28. <u>Effect of Conflict between Plan and Confirmation Order</u>. If there is any direct conflict between the terms of the Plan and the terms of this Confirmation Order, the terms of this Confirmation Order shall control.

29. <u>Binding Effect</u>. Pursuant to sections 1123(a) and 1142(a) of the Code and the provisions of this Confirmation Order, the Plan shall be binding upon and inure to the benefit of the Debtor, the Reorganized Debtor, all present, future and former holders of Claims and Interests and their respective heirs, personal representatives, successors and assigns.

30. <u>Modification</u>. The Plan may be altered, amended or modified after the Confirmation Date only in accordance with section 1127 of the Code.

31.     <u>Final Order</u>. Notwithstanding Bankruptcy Rules 3020(e) and 6004(h) and any other Bankruptcy Rule, to the extent applicable, the Bankruptcy Court finds that there is no reason for delay in the implementation of this Confirmation Order, and thus this Confirmation Order shall be effective and enforceable immediately upon the entry thereof.

This Order has been signed electronically. The judge's                   United States Bankruptcy Court
signature and court's seal appear at the top of the Order.