UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
Asheville Division

| | |
|---|---|
| Ronnie C. Hedgepeth, Jr., Shira Hedgepeth, Robert L. Young, and Mary H. Young,<br><br>    Appellants,<br><br>v.<br><br>Smoky Mountain Country Club Property Owners' Association, Inc., and SMCC Clubhouse, LLC,<br><br>    Appellees. | Case No. 1:19-cv-00360-MR |

# APPELLEES SMOKY MOUNTAIN COUNTRY CLUB PROPERTY OWNERS' ASSOCIATION, INC., AND SMCC CLUBHOUSE, LLC, MEMORANDUM OF LAW IN SUPPORT OF THEIR
## <u>MOTION TO DISMISS APPEAL</u>

Appellees Smoky Mountain Country Club Property Owners' Association, Inc. ("Debtor"), and SMCC Clubhouse, LLC ("SMCC"), respectfully request the Court, pursuant to Rule 8013 of the Federal Rules of Bankruptcy Procedure, to grant Appellees' motion to dismiss, and enter an order dismissing, the appeal filed by Appellants, Ronnie C. Hedgepeth, Jr. and Shira Hedgepeth, and Robert L. Young, and Mary H. Young, from the Order Confirming Plan of Reorganization of Debtor and SMCC entered by the Bankruptcy Court on December 19, 2019 (Bankr. Docket No.260) (the "Confirmation Order").

## INTRODUCTION

Appellants must show that they have both Article III standing and bankruptcy standing to appeal from the Confirmation Order, and they have not done so. Accordingly, their appeal must be dismissed.

## STATEMENT OF FACTS

Smoky Mountain Country Club is a residential planned community in Whittier, Swain County, North Carolina governed by (1) the Declaration[1] and (2) the North Carolina Planned Community Act, N.C. Gen. Stat. § 47F-1-101 *et. seq* (the "Act"). Disclosure Statement for Plan of Reorganization of Smoky Mountain Country Club Property Owners' Association, Inc., and Creditor SMCC Clubhouse, LLC, Section II.A [Bankr. Docket No. 104] (the "Disclosure Statement"). The Declaration was recorded on November 23, 1999, and has an initial term of fifty calendar years, commencing January 1, 2000, and ending on December 31, 2049. Declaration, Article X, Section 6 [Bankr. Docket No. 304-1]. The parties to the Declaration are (a) Conleys Creek Limited Partnership ("CCLP"), which is the developer of Smoky Mountain Country Club and the Declarant under the Declaration; (b) the Debtor, which is the homeowners association for Smoky Mountain Country Club; and (c) the Owners of Lots, Townhouse Units and Condominium Units in Smoky Mountain Country Club who are required to be Members of Debtor. See, generally, Declaration [Bankr. Docket No. 304-1].[2] The provisions in the Declaration are binding upon, and

---

[1] Capitalized terms not defined herein shall have the meaning given to them in the Amended Plan of Reorganization of Smoky Mountain Country Club Property Owners' Association, Inc., and Creditor SMCC Clubhouse, LLC [Bankr. Docket No. 253] (the "Plan") [Bankr. Docket No. 253]. Additionally, unless otherwise identified, the Debtor has included the abbreviation "Bankr." to cite to the Bankruptcy Appeal Record [Docket No. 7], consisting of docket entries from In re Smoky Mountain Country Club Property Owners' Association, Case No. 19-10286 (Bankr. W.D.N.C.).

[2] The terms Members and Owners will be used interchangeably herein.

inure to the benefit of Declarant, and its successors and assigns, Debtor, and the Owners, and their successors and assigns. Declaration, Article X, Section 2.

Under the Declaration, CCLP, as the Declarant, Debtor and Owners agree that (1) CCLP shall grant to both Debtor and the Owners a perpetual nonexclusive right to use the amenities, called the Clubhouse Use Facilities, and (2) the Owners shall pay the amenity fees, called the Clubhouse Dues, to Debtor, and (3) Debtor shall assess, bill and collect the Clubhouse Dues from Owners and shall pay all of the Clubhouse Dues collected from the Owners to CCLP. Specifically, the Declaration provides, in part, as follows:

> "Declarant shall grant to the Association and the Owners of Lots, Townhouse Units and Condominium Units a perpetual nonexclusive right to use the Clubhouse Use Facilities, and each Owner, in consideration thereof, shall pay the Clubhouse Dues to the Association, and the Association shall pay all of the Clubhouse Dues collected from Owners to Declarant." Declaration, Article II, Section 4.

> "The Association has the power, and shall have the obligation, to levy all of the following assessments:
> 
> (1) The Clubhouse Dues against all the Lots, Townhouse Units and Condominium Units owned by Owners (excluding Declarant)." Declaration, Article IV, Section 2.

> "Each Owner shall pay, and shall be personally liable for, all assessments, interest, late charges and fines levied by the Association against the Lot, Townhouse Unit or Condominium Unit owned by such Owner. The assessments shall be paid to the Association on the first day of each calendar month, or on or before the due date(s) where required to be paid in full or in other designated installments." Declaration, Article IV, Section 3.

> "The assessments, interest, late charges and fines shall be collected by the Association and used for their intended purposes." Declaration, Article IV, Section 4.

Under the Act, the provisions in the Declaration "are enforceable by their terms." N.C. Gen. Stat.§§ 47F-1-104(a), 47F-2-103(a). An association under the Act has the authority to "impose and receive any payments, fees, or charges . . . for services provided to lot owners." N.C. Gen. Stat.§ 47F-3-102(10). The North Carolina Court of Appeals held that the provisions relating to Clubhouse Dues in the Declaration are valid and enforceable, and that the Debtor is authorized to

{00335707 v 1 }2

Case 1:19-cv-00360-MR   Document 10   Filed 03/25/20   Page 3 of 12

collect Clubhouse Dues from Owners, because the developer's role "of providing access to and maintaining a clubhouse amenity is a "service" under N.C. Gen. Stat.§ 47F-3-102(10). *Conleys Creek Limited Partnership v. Smoky Mountain Country Club Property Owners Association,* 255 N.C. App. 236, 249-250, 246-247, 805 S.E. 2d 147 (2017), disc. rev. denied*,* 370 N.C. 695, 811 S.E.2d 596 (2018) (the "First State Court Appeal"). Thus, the Declaration and the Act impose the obligation on Owners to pay Clubhouse Dues assessed by Debtor.

Presently, Debtor has 163 Members, who are Owners of 163 Lots, Townhouse Units and Condominium Units in Smoky Mountain Country Club. Disclosure Statement, Section II.A. Appellants Hedgepeth and Young are two of the 163 Members. Appellants Hedgepeth own one Townhouse Unit, while Appellants Young own one Condominium Unit. See Objection to Chapter 11 Plan, ¶ 7 [Bankr. Docket No. 167] (the "Hedgepeth Objection"); Objection of Robert L. Young and Mary H. Young to Confirmation of Plan of Reorganization, 1 [Bankr. Docket No. 207] (the "Young Objection").

On January 18, 2013, SMCC, as assignee of CCLP, became the owner of the Clubhouse Use Facilities and became entitled to payment of Clubhouse Dues received by Debtor from each of the Owners. Disclosure Statement, Section II.A. From June 1, 2002, until September 27, 2014, Debtor assessed, billed and collected Clubhouse Dues from Owners, and paid the Clubhouse Dues so collected from Owners to CCLP through December 31, 2012, and thereafter to SMCC. Disclosure Statement, Section II.A.

On September 27, 2014, the Debtor breached its obligations to assess, bill and collect Clubhouse Dues from Owners. Disclosure Statement, Section II.A. On that date, the Debtor sent written notice to Owners stating that "effective immediately the POA will no longer bill for or collect the monthly fee for Clubhouse Dues," and that "POA will NO LONGER bill for or collect

Clubhouse Dues." Disclosure Statement, Section II.A. After September 27, 2014, Debtor failed and refused to assess, bill and collect Clubhouse Dues from Owners, and, as a consequence thereof, Debtor paid no Clubhouse Dues to SMCC. Disclosure Statement, Section II.A.

In response, SMCC sued Debtor for breach by repudiation of the Clubhouse Dues provisions in the Declaration (the "State Court Action"). Disclosure Statement, Section II.A. The North Carolina Court of Appeals in the First State Court Appeal, *Conleys Creek Limited Partnership v. Smoky Mountain Country Club Property Owners Association,* 255 N.C. App. 236, 805 S.E. 2d 147 (2017), disc. rev. denied, 370 N.C. 695, 811 S.E.2d 596 (2018), reversed a summary judgment by the trial court in favor of Debtor against SMCC, held that the Clubhouse Dues provisions in the Declaration are valid and enforceable, and remanded the State Court Action for trial on the issues of breach and damages. Disclosure Statement, Section II.A. The Court of Appeals stated, in part, that: "We make no ruling regarding the obligation of the homeowners themselves to pay Clubhouse Dues to the Association, as they are not parties to this action. We only note that homeowners within a planned community are generally obligated to respect not only real covenants governing their property, but also to pay any dues which are assessed by their association." 255 N.C. App. at 248. On remand, a jury rendered a verdict in favor of SMCC against Debtor. Disclosure Statement, Section II.A. On May 31, 2019, the judgment was entered in favor of SMCC against Debtor in the amount of $7,071,054.46, consisting of (a) the principal sum of $5,149,921.94, plus (b) prejudgment interest on the principal sum at the legal rate from September 27, 2014, through May 28, 2019, in the amount of $1,921,132.52 (the "State Court Judgment"). Disclosure Statement, Section II.A. Appellants are not parties to, and are not named in, the State Court Judgment, and the State Court Judgment imposes no obligations on Appellants.

On May 31, 2019, the Debtor filed an appeal from the State Court Judgment (the "Second State Court Appeal"). Disclosure Statement, Section II.A. Appellants are not parties to the Second State Court Appeal.

On July 26, 2019, the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Case"). Disclosure Statement, Section I.

Debtor proceeded through the Chapter 11 Case, using the bankruptcy process to negotiate a settlement with SMCC for payment of the State Court Judgment. Tr. of Proceedings before the Honorable George R. Hodges, United States Bankruptcy Judge, Dec. 18, 2019, 95:9-23 [Bankr. Docket No. 283] (the "Transcript"). The negotiations culminated in the Amended Plan (the "Plan"). (Bankr. Docket No. 253). The Plan came before the Court for confirmation on December 18, 2019. Transcript, 112:14-24. The Court confirmed the Plan and entered the Confirmation Order on December 19, 2019.

The Plan provides that "(s)o long as the Debtor and Reorganized Debtor perform their obligations to SMCC Clubhouse as set forth in the Plan, SMCC Clubhouse shall stay all execution on the Judgment or any judgment obtained for attorneys' fees, as set forth in Section 4.4.7, below." Plan, Section 4.4.6. The obligations of Debtor under the Plan are (1) to assess, bill and collect past (from and after September 27, 2014 through December 31, 2019) and future (from and after January 1, 2020) Clubhouse Dues from the Owners, and to pay the amount of Clubhouse Dues so collected to SMCC, Plan, Sections 4.4.1 and 4.4.2; and (2) to pay SMCC $1,500,000 as a principal payment on the State Court Judgment payable in three equal annual payments of $500,000, and to assess each of the 163 Owners his pro rata share thereof, Plan, Section 4.4.3; and (3) to dismiss the Second State Court Appeal, Plan, Section 8.6.2. The Plan and Confirmation Order obligate the Debtor to assess, bill and collect Clubhouse Dues from Owners, but do not obligate Owners to

pay Clubhouse Dues to Debtor. The Plan and Confirmation Order obligate the Debtor to pay the principal payments of $1,500,000 on the State Court Judgment and to assess each of the 163 Owners his pro rata share thereof, but do not obligate the Owners to pay the principal payments of $1,500,000 to Debtor. The Bankruptcy Court determined in the Confirmation Order, Paragraph L(e)(i)-(iii), pages 6-8, that only the Declaration and the Act obligate the Owners to pay assessments for Clubhouse Dues and to pay the $1,500,000 principal payments on the Judgment, as follows:

    e. **Implementation of Plan (11 U.S.C. §1123(a)(5).** The Plan provides adequate and proper means for implementation of the Plan, including without limitation as described in Article VII of the Plan. Thus, the Plan satisfies section 1123(a)(5) of the Code. Without limitation, the Court finds that the Debtor and Reorganized Debtor would be likely to succeed in any litigation challenging the right to assess Members for amounts pursuant to the Declaration and the North Carolina Planned Community Act (N.C.G.S. § 47F-1-101 et al.). as follows:

    (i) Under Article III, Section 2(2) of the Declaration, the Debtor has the authority to assess Members for Clubhouse Dues, which, of necessity, includes the authority to assess Members for payment of the Judgment for the nonpayment of Clubhouse Dues. In order to collect a debt from a delinquent debtor, the creditor must collect on a judgment obtained for nonpayment of the debt, and thus, the authority of the Debtor to assess Members for and collect Clubhouse Dues includes the authority of the Debtor to assess Members for and collect amounts necessary to pay the Judgment which was obtained for nonpayment of Clubhouse Dues.

    (ii) In addition to the authority under the Declaration for the Debtor to assess Members and collect the Judgment pro rata from each Owner, the same authority was granted to the Debtor by, at least, the following provisions of the North Carolina Planned Community Act:

        (1) N.C. Gen. Stat. §47 F-3-102(2) provides that an association may "collect assessments for common expenses from lot owners." "Common expenses means expenditures made by or financial liabilities of the association, together with any allocations to reserves." N.C. Gen. Stat. §47 F-1-103(5). The Judgment is a financial liability of the Debtor and is therefore a "common expense" for which the Debtor has the authority to assess and collect from the Owners.

        (2) N.C. Gen. Stat. §47 F-3-115 provides that "Assessments to pay a judgment against the association may be made only against the lots in the planned community at the time the judgment was entered, in proportion to their common expense liabilities."

        (3) N.C. Gen. Stat. §47 F-3-102(10) provides that an association may "(i)mpose and receive any payments, fees, or charges for the use, rental, or operation of the common elements other than the limited common elements and for services provided to lot owners."

The North Carolina Court of Appeals held that SMCC Clubhouse's role of providing access to and maintaining the Clubhouse Use Facilities is a "service" under N.C. Gen. Stat. §47 F-3-102(10) for which the Debtor is required and authorized to assess, bill and collect Clubhouse Dues for payment to SMCC Clubhouse. Thus, the Judgment is a "payment" that the Debtor may "impose and receive" for the "service" of providing the Clubhouse Use Facilities. *Conleys Creek Limited Partnership v. Smoky Mountain Country Club Property Owners Association, Inc.*, 255 N.C. App. 236, 805 S.E. 2d 147 (2017), disc. rev. denied, 370 N.C. 695, 811 S.E. 2d 596 (2018).

iii. Further, the Debtor may "[i]nstitute, defend, or intervene… in litigation… on matters affecting the planned community." N.C.G.S. §47F-3-102(4). Additionally, the Debtor may "make contracts and incur liabilities." N.C.G.S. §47F-3-102(5). As the Debtor has the power to sue and be sued, and enter into contracts and incur liabilities, it must have the power and authority to assess its Members to pay any such liabilities and judgments against the Debtor arising out of such litigation and contracts.

Following entry of the Confirmation Order, Appellants Hedgepeth and Young filed their Notice of Appeal on December 31, 2019 [Bankr. Docket No. 279] (the "Appeal"). On January 7, 2020, Appellants Hedgepeths and Youngs filed a Motion for Stay Pending Appeal [Bankr. Docket No. 286]. The Bankruptcy Court determined that the Motion should be denied because (1) Appellants have not demonstrated that failure to grant a stay is likely to cause them irreparable harm, and (2) Appellants have not demonstrated that they are likely to succeed on their appeal of the Confirmation Order. The Bankruptcy Court entered its Order Denying Motion for Stay Pending Appeal on February 4, 2020, [Bankr.. Docket No. 318].

In their Appellate Brief, Appellants contend that they are "persons aggrieved by the Confirmation Order and, therefore, have standing to file this appeal" and that the bases therefore are that they are "parties obligated under the Plan to pay past and future Clubhouse Dues (under) Article IV, Section 4.4.1 and Section 4.4.2," and that they "are also obligated under Article IV, Section 4.4.3, of the Plan to pay a pro rata share" of the principal payments of $1,500,000 on the State Court Judgment. See Brief of Appellants, filed 02/27/20, as Document 8, at Page 9. The Plan does not state that Owners are "obligated" to pay past and future Clubhouse Dues, and does not state that Owners are "obligated" to pay their pro rata shares of the principal payments on

$1,500,000. Appellants have not and cannot demonstrate that the Confirmation Order obligates them to pay Clubhouse Dues and/or payments on the State Court Judgment. In order to appeal from a bankruptcy order to the federal district court Appellants must have both Article III standing and bankruptcy standing, and Appellants lack both.

## STATEMENT OF THE LAW

The appeal by Appellants from the Confirmation Order must be dismissed on the grounds that (1) Appellants do not have standing to appeal under Article III of the United States Constitution, *Carl F. Schier PLC v. Nathan (In re Capital Contr. Co.)*, 924 F.3d 890, 897 (6th Cir. 2019) and (2) Appellants have no standing to appeal from the Confirmation Order because they are not persons aggrieved by the Confirmation Order. *Dionne v. Headwaters at Banner Elk*, 2019 WL 2464476 at page 4 (W.D.N.C. June 11, 2019).

> A. *Appellants lack Article III standing to appeal the Confirmation Order to the Federal District Court.*

The federal judicial power extends only to cases or controversies within the scope of Article III of the United States Constitution. To have standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1547 (2016). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan v. Defenders of Wildlife,* 112 S. Ct. 2130, 2136 (1992). Parties that file appeals from bankruptcy courts to Article III courts must satisfy Article III standing requirements of injury, causation and redressability. *Carl F. Schier*, 924 F.3d at 897. "On appeal, moreover, 'the focus shifts to injury caused by the judgment rather than injury caused by the underlying facts.'" *Id.* (quoting 15A Charles Alan Wright *et al*., *Federal Practice and Procedure* § 3902 (2d ed. 2019)).

Appellants claim that the first element of "injury" is that they will be obligated to pay Clubhouse Dues and their pro rata share of the principal payments of $1,500,000 on the State Court Judgment. The second element of causation is that they claim that the injury is caused by the Plan and not Confirmation Order. It will be assumed that the Appellants mean that their injury is caused by the Confirmation Order  The second element of Article III standing is that the injury be "fairly traceable" to the Confirmation Order, which means that Appellants must show that there is a substantial likelihood that the Confirmation Order caused the injury. *NC RSOL v. Boone,* 402 F. Supp. 3d 240, 250 (M.D.N.C. 2019). The Declaration and the Act caused the injury. The Confirmation Order does not impose any obligation on Appellants to pay Clubhouse Dues and their pro rata share of the principal payments of $1,500,000 on the State Court Judgment. Therefore, the injury was not caused, and is not "fairly traceable" to the Confirmation Order. The third element of redressability "asks whether a judicial decision granting the requested relief will alleviate plaintiffs' alleged injury." *Leifert v. Strach,* 404 F. Supp. 3d 973, 979 (M.D.N.C. 2019). If there was no Confirmation Order, Appellants would still be obligated under the Declaration and the Act, to pay Clubhouse Dues and their pro rata share of the principal payments of $1,500,000 on the State Court Judgment. Thus, the injury is not likely to be redressed by a reversal of the Confirmation Order. Since Appellants cannot show causation and redressability, they lack Article III standing to appeal from the Confirmation Order.

> B. *Appellants lack bankruptcy standing to appeal from the Confirmation Order, because they are not persons aggrieved by the Confirmation Order.*

Only a party with standing may appeal a bankruptcy court order. *White v. Univision of Va. Inc. (in re Urban Broad Corp.)* 401 F.3d 236, 243 (4th Cir. 2005). To facilitate the unique goals of bankruptcy proceedings, standing in bankruptcy court is more limited than general Article III standing. *Richman v. First Woman's Bank (In re Richman),* 104 F.3d 654, 656-657 (4th Cir. 1997)

(The goals of bankruptcy are "achieved primarily by narrowly defining who has standing in a bankruptcy proceeding."). "Standing to appeal an order of the bankruptcy court is limited to 'a person aggrieved by the bankruptcy order." *Dionne v. Headwaters at Banner Elk*, 2019 WL 2464476 at page 4 (W.D.N.C. June 11, 2019) (citing *In re Urban Broadcasting Corporation*, 401 F.3d 236, 243 (4th Cir. 2005)). "A party is aggrieved if he is directly and adversely affected pecuniarily- if he has a financial stake in the order being appealed. A person has a financial stake in a bankruptcy court order when the order diminishes (his) property, increases (his) burdens or impairs (his) rights." *National Erectors Rebar, Inc. v. Weaver Cooke Constr., LLC,* 2016 WL 386173 (E.D.N.C. Jan. 28, 2016) (internal citations and quotes omitted); s*ee also Dionne*, 2019 WL 2464476 at page 4 (W.D.N.C. June 11, 2019).

Appellants are not persons aggrieved by the Confirmation Order. Their obligations to pay assessments for Clubhouse Dues and their pro rata share of the principal payments of $1,500,000 on the State Court Judgment arise from the Declaration and the Act, and not from the Confirmation Order, which does not provide that Appellants are obligated to pay Clubhouse Dues and/or principal payments on the State Court Judgment. Since Appellants, by virtue of the Declaration and the Act, would be obligated to pay assessments for Clubhouse Dues and principal payments on the State Court Judgment even without entry of the Confirmation Order, they did not have a financial stake in the Confirmation Order, because the Confirmation Order did not diminish their property, increase their burdens or impair their rights. It was the Declaration and the Act, and not the Confirmation Order, that obligated Appellants to pay Clubhouse Dues and their pro rata share of principal payments of $1,500,000 on the State Court Judgment, and the obligations would remain whether or not the Confirmation Order exists. Because the Confirmation Order does not

directly and adversely affect the pecuniary interests of Appellants, they are not "aggrieved persons" and therefore they have no bankruptcy standing to appeal from the Confirmation Order.

## CONCLUSION

Debtor and SMCC request that the Court grant their motion to dismiss and to enter an order dismissing the appeal of Appellants from the Confirmation Order.

This the 25th day of March, 2020.

                                                        RAYBURN COOPER & DURHAM, P.A.

By: /s/ Ross R. Fulton
John R. Miller, Jr.
N.C. State Bar No. 28689
Ross R. Fulton
N.C. State Bar No. 31538
Rachel M. Buck
N.C. State Bar No. 52604
Suite 1200, The Carillon
227 West Trade Street
Charlotte, NC 28202
(704) 334-0891

*Counsel to the Debtor*

/s/ Marshall Cornblum
Marshall Cornblum
P.O. Box 217
Hayward, CA 94557

*Counsel to SMCC Clubhouse, LLC*