# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### Asheville Division

Ronnie C. Hedgepeth, Jr., Shira
Hedgepeth, Robert L. Young, and
Mary H. Young,

     Appellants,

v.

     Case No. 1:19-cv-00360-MR

Smoky Mountain Country Club
Property Owners' Association, Inc.,
and SMCC Clubhouse, LLC,

     Appellees.

---

## BRIEF OF APPELLEES SMOKY MOUNTAIN COUNTRY CLUB PROPERTY OWNERS' ASSOCIATION, INC., AND SMCC CLUBHOUSE, LLC, <u>IN OPPOSITION TO APPEAL</u>

Ross R. Fulton
John R. Miller, Jr.
Rayburn Cooper & Durham, P.A.
Suite 1200, The Carillon
227 West Trade Street
Charlotte, NC 28270
(704) 334-0891
rfulton@rcdlaw.net
jmiller@rcdlaw.net

Counsel to the Debtor

Marshall Cornblum
P.O. Box 217
Hayward, CA 94557
(510) 847-2964
mecornblum@aol.com


Counsel to SMCC Clubhouse, LLC

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Bankruptcy Procedure 8012, neither Appellee Smoky Mountain Country Club Property Owners' Association, Inc., nor Appellee SMCC Clubhouse, LLC has any parent company, and neither is owned 10% or more by a publicly held corporation.

## TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................ 2

TABLE OF CONTENTS ..................................................................................... 2

TABLE OF AUTHORITIES ............................................................................... 3

STATEMENT REGARDING ORAL ARGUMENT ............................................ 6

STATEMENT OF THE CASE ............................................................................ 7

STANDARD OF APPELLATE REVIEW .......................................................... 10

STATEMENT OF FACTS ................................................................................. 12

SUMMARY OF ARGUMENT .......................................................................... 17

ARGUMENT ..................................................................................................... 19

   I.   Appellants Waived or Abandoned their Arguments on Appeal ...................... 19

      A.   Appellants Failed to Properly Designate Issues for Appeal Pursuant to Rule 8009 ............................................................................................ 19

      B.   Appellants' Brief is Not in Compliance with Federal Rule of Bankruptcy Procedure 8014 and Should Not be Considered .................................. 24

   II.   Appellants Lack Standing ............................................................................ 27

   III.   The Bankruptcy Court Correctly Concluded that The Plan Satisfies the Requirements for Confirmation Under 11 U.S.C. § 1129 ...................................... 28

      A.   Debtor's Assessment Authority Provides an Adequate and Proper Means of Implementation ............................................................................... 29

      B.   The Plan is Feasible Because Debtor's Ability to Control its Own Performance Makes the Chances of Success Reasonably Likely ........................ 31

      C.   The Plan Was Proposed and Negotiated in Good Faith and Not By Any Means Forbidden By Law ................................................................... 46

D.     Bankruptcy Court Reasonably Exercised its Discretion in Approving the Settlement ........................................................................................ 51

E.     Appellants' Newly Stated Condo Lien Issue ............................................. 56

# TABLE OF AUTHORITIES

**Cases**

*Advanced Analytics Lab., Inc. v. Environmental Aspecs, Inc. (In re Environmental Aspecs, Inc.)*, 235 B.R. 378, 384 (E.D.N.C. 1999) ................................................................. 11

*Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573-74, 105 S. Ct. 1504, 84 L. Ed. 2d 518 (1985) ....................................................................................... 11, 31

*Annunziata v. Putnam at Tinton Falls, LLC (In re Annunziata)*, 2018 U.S. Dist. LEXIS 32029, *17-21 (D. N.J. 2018) ................................................................ 54

*Bangert v. McCauley (In re McCauley)*, 105 B.R. 315, 320 (E.D. Va. 1989) ........................ 20

*Beeter v. Tri-City Prop. Mgmt Servs. (In re Beeter)*, 173 B.R. 108 (W.D. Tex. 1994) .............. 43

*Belk, Inc. v. Meyer Corp.*, 679 F.3d 146, 152 n.4 (4th Cir. 2012) ........................................ 46

*Bodine v. Harris Village Property Owners Association*, 207 N.C. App. 52, 61, 699 S.E.2d 129, 135 (2010) ................................................................................................. 34

*Brown v. Nucor Corp.*, 785 F.3d 895, 918 (4th Cir. 2015) ................................................... 31

*Carpet Super Mart, Inc. v. Benchmark International Co. Sales Specialist, LLC*, 789 Fed. Appx. 379 (4th Cir. 2020) ........................................................................................ 25

*Carter v. Lee*, 283 F.3d 240, 252 n. 11 (4th Cir. 2002) ....................................................... 25

*Coast Cities Truck Sales v. Navistar Int'l Transp. Co.*, 147 B.R. 674, 677 (D.N.J. 1992) ......... 43

*Conleys Creek Limited Partnership v. Smoky Mountain Country Club Property Owners Association, Inc.*, 255 N.C. App. 236, 246, 805 S.E.2d 147 (2017) ...................................... 34

*Crawford v. CIT Group/Commercial Servs. (In re Southern Hosiery Mill, Inc.)*, 2012 Bankr. LEXIS 802, at *3 (Bankr. W.D.N.C. 2012) ....................................................... 52

*Cumbo v. McDow*, 2006 U.S. Dist. LEXIS 89624, *2 (E.D. Va. Dec. 12, 2006) ..................... 21

*Deutsche Bank Nat'l Tr. Co. v. FDIC*, 405 U.S. App. D.C. 130, 135 n.5, 717 F.3d 189, 194 (2013) ......................................................................................................... 27

*Dunlap v. Educational Credit Management Corporation (In re Dunlap)*, 2017 U.S. Dist. LEXIS 10338, *4 (W.D.N.C. Jan. 25, 2017) ................................................ 11, 19, 20, 21, 22, 23

*Educational Credit Management Corporation v. Gouge,* 320 B.R. 582, 583 (W.D.N.C. 2005) 11, 29

*Edwards v. City of Goldsboro*, 178 F.3d 231, 241 n.6 (4th Cir. 1999) ................................... 25

*Financial Sec. Assur. v. T-H New Orleans Ltd. Pshp. (In re T-H New Orleans L.P.)*, 116 F.3d 790, 802 (5th Cir. 1997) ............................................................................... 50

*Gibbs v. Norfolk Southern Railway*, 474 F.2d 1341 (4th Cir. 1983) ............................... 11, 29

*Happ v. Creek Pointe Homeowner's Association*, 215 N.C. App. 96, 108-109, 717 S.E.2d 401, 409 (2011) ................................................................................................. 39

*Herrera v. Finan*, 709 Fed. Appx. 741, 746 (4th Cir. 2017) ................................................ 25

*In re American Capital Equipment, LLC*, 688 F.3d 145, 156 (3d. Cir. 2012) ......................... 33

*In re Bartlett*, 92 B.R. 142, 144 (Bankr. E.D.N.C. 1988) ...................................................... 32

*In re Cabrera v. Home Loan Corp.*, 2007 U.S. Dist. LEXIS 94399, *7 (W.D.N.C. 2007) ........ 21

*In re Coram Healthcare Corp.*, 315 B.R. 321, 330 (Bankr. D. Del. 2004) ............................... 53

*In re Eagan*, No. Chapter 11 12-30525, 2013 Bankr. LEXIS 260, at *10-11 (Bankr. W.D.N.C. Jan. 22, 2013) ................................................................................................................... 46, 47

*In re FCX, Inc.*, 853 F.2d 1149, 1155 (4th Cir. 1988) ......................................................... 30

*In re General Development Corp.*, 135 B.R. 1002, 1007 (Bankr. S.D. Fla. 1991) ................... 47

*In re Jasik*, 727 F.2d 1379, 1383 (5th Cir. 1984) ................................................................. 47

*In re Koelbl*, 751 F.2d 137, 139 (2d Cir. 1984) .................................................................... 48

*In re Louise's Inc.*, 211 B.R. 798, 801 (Bankr. D. Del. 1997) ................................................ 52

*In re Madison Hotel Assocs.*, 749 F.2d 410, 425 (7th Cir. 1984) ........................................... 46

*In re Manchester Oaks Homeowners Association, Inc.*, 2014 Bankr. LEXIS 951 (Bankr. E.D. Va. March 12, 2014) ................................................................................................................. 37

*In re Marvel Entm't Grp., Inc.*, 222 B.R. 243, 250 (D. Del. 1998) ......................................... 52

*In re Murray*, 2012 Bankr. LEXIS 1281, at *7 (Bankr. E.D.N.C. 2012) ................................. 32

*In re New Valley Corp.*, 168 B.R. 73, 81 (Bankr. D.N.J. 1994) .............................................. 47

*In re PWS Holding Corp.*, 228 F.3d 224, 242 (3d Cir. 2000) ................................................. 50

*In re Renegade Holdings, Inc.*, 429 B.R. 502, 517 (Bankr. M.D.N.C. 2010) ........................... 30

*In re Snap-On Tools, Inc. v. Freeman (In re Freeman)*, 956 F.2d 252, 255 (11th Cir. 1992)..... 21

*In re Stolrow's, Inc.*, 84 B.R. 167, 172 (B.A.P. 9th Cir. 1988) .............................................. 50

*In re Teltronics Serv., Inc.*, 762 F.2d 185, 189 (2d Cir. 1985) .............................................. 53

*In re Texas Extrusion Corp.*, 844 F.2d 1142, 1160 (5th Cir. 1988) ........................................ 48

*In re Toy & Sports Warehouse, Inc.*, 37 B.R. 141, 149 (Bankr. S.D.N.Y. 1984) ...................... 29

*In re Trigg*, 630 F.2d 1370, 1374 (10th Cir. 1980) .............................................................. 43

*In re Washington Mutual, Inc.*, 442 B.R. 314, 328 (Bankr. D. Del. 2011) .............................. 53

*In re Wood*, 1991 U.S. Dist. LEXIS 20083, at *11-12 (W.D. Va. Nov. 11, 1991) ................... 28

*In re Woodbridge Group of Companies, LLC*, 592 B.R. 761, 772 (Bankr. D. Del. 2018) ......... 52

*In re Worldcom, Inc.*, 347 B.R. 123, 137 (Bankr. S.D.N.Y. 2006) ......................................... 53

*Int'l Union, UAW v. Mack Trucks, Inc.*, 820 F.2d 91, 95 (3d Cir. 1987) .................................. 54

*Johnson v. United States*, 734 F.3d 352, 360 (4th Cir. 2013)................................................. 25

*Karpel v. Inova Health Sys. Servs.*, 134 F.3d 1222, 1227 (4th Cir. 1998) ............................... 25

*Key3Media Grp., Inc. v. Puliver.com Inc. (In re Key3Media Grp., Inc.)*, 336 B.R. 87, 92 (Bankr. D. Del. 2005)..................................................................................................................... 52, 53

*Maloy v. Sigmon (In re Maloy)*, 2009 Bankr. LEXIS 4010, *12 (Bankr. W.D.N.C. 2009) ... 50, 54

*McGahren v. First Citizens Bank & Trust Co. (In re Weiss)*, 111 F.3d 1159, 1166 (4th Cir. 1997) ....................................................................................................................................... 10

*Midsouth Golf, Inc. v. Fairfield Harbourside Condominium Association, Inc.*, 652 S.E.2d 378 (2007) ............................................................................................................................... 38

*Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996)........................................... 52

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)....................................................................................................................... 53, 54

*Rice v. Randolph*, 96 N.C. App. 112, 113, 384 S.E.2d 295, 297 (1989)................................. 57

*Ring v. Mayberry*, 168 N.C. 563, 84 S.E.2d 846 (1915)....................................................... 39

*Sundale, Ltd. v. Ocean Bank*, 441 B.R. 384, 387 (S.D. Fla. 2010) ........................................ 19

*Taylor v. Volvo North America Corporation*, 339 N.C. 238, 261, 451 S.E.2d 618, 631 (1994) . 41

*The Argo Fund Ltd. v. Bd. of Directors of Telecom Argentina, S.A. (In re Bd. of Directors of Telecom Argentina, S.A.)*, 528 F.3d 162, 174 (2d Cir. 2008) ................................................ 47

*Travelers Ins. Co. v. Pikes Peak Water Co. (In re Pikes Peak Water Co.)*, 779 F.2d 1456, 1459 (10th Cir.1985) ................................................ 47

*United States v. Conrad*, 760 Fed. Appx. 199, 204-205 (4th Cir. 2019)................................... 26

*Videsh Sanchar Nigam Ltd. v. Startec Global Communs. Corp. (In re Startec Global Commc'ns Corp., et al.)*, 300 B.R. 244, 249 (D. Md. 2003)............................................................ 21

*Warth v. Seldin*, 422 U.S. 490, 499, 95 S. Ct. 2197, 2205, 45 L. Ed. 2d 343 (1975)..... 27, 41, 42

*Williams v. Biesecker*, No. COA10-1206, 2011 N.C. App. LEXIS 1005, at *10-14 (Ct. App. May 17, 2011)................................................ 30

*Zimmermann v. Jenkins (In re GGM, P.C.)*, 165 F.3d 1026, 1031-32 (5th Cir. 1999) .............. 21

*Zurich Am. Ins. Co. v. Tessler (In re J.A. Jones, Inc.)*, 492 F.3d 242, 249 (4th Cir. 2007) ........ 10

**Statutes**

11 U.S.C. § 1123(a)(5)(B) ................................................ 29

11 U.S.C. § 1123(a)(5)(F) ................................................ 30

11 U.S.C. § 1123(b)(3)(A) ................................................ 52

11 U.S.C. § 1123(b)(6) ................................................ 52

11 U.S.C. § 1129(a)(11) ................................................ 40

11 U.S.C. § 1129(a)(3) ................................................ 46

11 U.S.C. § 365(a) ................................................ 43

11 U.S.C. § 523(a)(8) ................................................ 23

11 U.S.C. 1123(a)(5) ................................................ 14

11 U.S.C. 1129(a)(1) ................................................ 19, 22

11 U.S.C. 1129(a)(3) ................................................ 14, 19

N.C. G. S., Chapter 47F ................................................ 7, 34, 35, 36, 37, 40, 44

N.C. Gen. Stat. § 47F-3-105 ................................................ 41

N.C. Gen. Stat. §47F-1-103(5) ................................................ 36

N.C. Gen. Stat. §47F-3-102(10) ................................................ 36

N.C. Gen. Stat. §47F-3-102(2) ................................................ 36

**Other Authorities**

7 Collier on Bankruptcy P 1129.02 (16th 2020) ................................................ 51

*9-52 Moore's Federal Practice – Civil* § 52.31 (2015) ................................................ 11

**Rules**

Fed. R. App. P. 28(a)(8)(A) ................................................ 25

Fed. R. Bankr. P. 8009 ................................................ 19

Fed. R. Bankr. P. 8014 (a)(6) ................................................ 26

Fed. R. Bankr. P. 9019 ................................................ 42, 51

## STATEMENT REGARDING ORAL ARGUMENT

Appellees assert that the factual and legal issues raised by this appeal do not necessitate oral argument.

Appellees Smoky Mountain Country Club Property Owners Association, Inc. ("Debtor") and SMCC Clubhouse, LLC ("SMCC") file their Appellees' Brief in response to the Appellants' Brief filed by Appellants Ronnie C. Hedgepeth, Jr., Shira Hedgepeth, Robert L. Young and Mary H. Young.

## STATEMENT OF THE CASE

Appellants appeal from a Confirmation Order by the United States Bankruptcy Court for the Western District of North Carolina in the Chapter 11 case which approved and confirmed a joint Plan of Reorganization of Debtor and SMCC in which Debtor agrees to pay, over time, a State Court Judgment obtained by SMCC against Debtor by assessing the Owners of Lots, Townhouse Units and Condominium Units (the "Owners") in Smoky Mountain Country Club, a planned community governed by a Declaration and the North Carolina Planned Community Act, N.C. G. S., Chapter 47F (the "Act"). Appellants are two of the 163 Owners, who, under the Declaration and the Act, are obligated to pay the assessments levied by Debtor.

Appellants lack Article III standing and bankruptcy standing to appeal from the Confirmation Order. Appellants lack standing to raise the issues argued in their Appellants' Brief.

Smoky Mountain Country Club is a planned community governed by a Declaration and the Act. Under the Declaration, SMCC's predecessor granted to

Debtor and Owners in Smoky Mountain Country Club a perpetual nonexclusive right to use the Clubhouse Use Facilities (locker room, exercise facilities, swimming pool and two tennis courts), and, in consideration thereof, Owners agree to pay Clubhouse Dues (in the exact amounts established in the Declaration) to Debtor, and Debtor agrees to assess, bill and collect Clubhouse Dues from Owners and to pay all Clubhouse Dues collected from Owners to SMCC (the "Clubhouse Dues Agreement"). The Declaration and the Act obligate the Owners to pay assessments levied by Debtor for Clubhouse Dues.

On September 27, 2014, Debtor breached the Clubhouse Dues Agreement by sending written notice to Owners that Debtor shall not thereafter assess, bill and collect Clubhouse Dues from Owners for payment to SMCC. SMCC sued Debtor for damages for anticipatory breach of the Clubhouse Dues Agreement, which culminated, after the North Carolina Court of Appeals ruled that the Clubhouse Dues Agreement was valid and enforceable and, on remand, after a jury trial in which the jury found that Debtor breached the Clubhouse Dues Agreement and awarded damages, in a State Court Judgment, which, together with attorneys' fees and accrued interest, presently exceeds $8,000,000. Debtor filed an appeal from the State Court Judgment (the "State Court Appeal").

The State Court Judgment was entered on May 31, 2019, at which time there were (and still are) 163 Owners in Smoky Mountain Country Club, who are required

to be Members in Debtor. If Debtor had assessed each Owner for payment of his pro rata share of the State Court Judgment, together with attorneys' fees and accrued interest, each Owner would have been assessed about $50,000. Under the Declaration and the Act, the Owners are obligated to pay assessments levied by Debtor to pay the State Court Judgment, attorneys' fees and accrued interest.

Debtor, being unable to pay the State Court Judgment, filed Chapter 11 under the Bankruptcy Act to stay the State Court Judgment pending a decision in the State Court Appeal. At the time of filing Chapter 11 proceedings, Debtor had not then assessed the Owners pro rata for payment of the State Court Judgment. During the Chapter 11 proceedings, Debtor and SMCC agreed to, and jointly proposed, an Amended Plan of Reorganization (the "Plan") in which, basically, SMCC agrees to stay enforcement of the State Court Judgment, and Debtor agrees to dismiss the State Court Appeal, and to pay, by assessing the Owners, the State Court Judgment over the thirty years remaining of the fifty year term of the Declaration. The Bankruptcy Court approved and confirmed the Plan, and entered its Confirmation Order.

Appellants, who are two of the 163 Owners, appeal from the Confirmation Order, and argue that they have standing to appeal from the Confirmation Order because the Plan, which was confirmed by the Confirmation Order, obligates them to pay the assessments to be levied under the Plan by Debtor. Appellants' argument is in error. The Declaration and the Act, and not the Confirmation Order, obligate

Appellants to pay the assessments to be levied by Debtor under the Plan. Appellants do not have Article III standing and bankruptcy standing which are both required to appeal from the Confirmation Order. In addition, Appellants lack standing to raise the issues they argue in their Appellants' Brief in support of their appeal. Even if the Court determines that Appellants have standing to appeal from the Confirmation Order or to raise issues argued by them in their Appellants' Brief, they have waived or abandoned each argument they have made in support of reversing the Confirmation Order because of failure to comply with the Federal Rules of Bankruptcy Procedure. In any event, the new arguments addressed in Appellants' Brief fail on the merits. This appeal should be dismissed or, if considered, the Bankruptcy Court's Confirmation Order should be affirmed.

## STANDARD OF APPELLATE REVIEW

When this Court hears an appeal from an order of the Bankruptcy Court, the "bankruptcy court's findings of fact are reviewed for clear error, and conclusions of law are reviewed de novo." *Zurich Am. Ins. Co. v. Tessler (In re J.A. Jones, Inc.)*, 492 F.3d 242, 249 (4th Cir. 2007). "Findings of fact are clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *McGahren v. First Citizens Bank & Trust Co. (In re Weiss)*, 111 F.3d 1159, 1166 (4th Cir. 1997) (internal quotation marks omitted). "Stated differently, a choice

between two permissible views of the evidence cannot be clearly erroneous," *9-52 Moore's Federal Practice – Civil* § 52.31 (2015), and "so long as the trial court's factual finding is plausible, the appellate court may not reverse it," Id. § 206.03; *see also Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573-74, 105 S. Ct. 1504, 84 L. Ed. 2d 518 (1985); *Dunlap v. Educational Credit Management Corporation (In re Dunlap)*, 2017 U.S. Dist. LEXIS 10338, *4 (W.D.N.C. Jan. 25, 2017).

Due regard must be given to the Bankruptcy Court's assessment of the credibility of the witnesses. *Educational Credit Management Corporation v. Gouge,* 320 B.R. 582, 583 (W.D.N.C. 2005). Thus, "absent extraordinary circumstances, an appellate court should not disturb a factfinder's credibility determinations." *Advanced Analytics Lab., Inc. v. Environmental Aspecs, Inc. (In re Environmental Aspecs, Inc.)*, 235 B.R. 378, 384 (E.D.N.C. 1999). A strong presumption exists in favor of the lower court's findings of fact, and the burden of proof is on the party attacking their validity. *Gibbs v. Norfolk Southern Railway*, 474 F.2d 1341 (4th Cir. 1983).

Here, Appellants do not specifically challenge any of the Bankruptcy Court's findings of fact or conclusions of law. Nevertheless, the issues presented for appeal are questions of fact and are reviewed for clear error.[1]

---

[1] Appellants argue in their Brief that a reviewing court should interpret the terms of the plan and confirmation order 'de novo and holistically'; however in the case cited for this proposition, *In re Idearc, Inc.*, the question presented was whether to affirm the district court's order granting

# STATEMENT OF FACTS

Appellants appeal from the Confirmation Order entered by the Bankruptcy Court on December 19, 2019 [Bankr. Docket No. 260] [2] ; Amended Plan of Reorganization [Bankr. Docket No. 253] (the Plan); Notice of Appeal [Docket No. 1] ("Notice of Appeal"). Appellees Debtor and SMCC jointly submitted the Chapter 11 Plan for confirmation and appear here as Appellees defending the Bankruptcy Court's Confirmation Order. *See* Plan, Notice of Appeal.

Smoky Mountain Country Club is a residential planned community in Whittier, Swain County, North Carolina governed by (1) the Declaration[3] [Bankr. Docket No. 36-1] ("Declaration") and (2) the Act. *See* Disclosure Statement for Plan of Reorganization of Smoky Mountain Country Club Property Owners' Association, Inc., and Creditor SMCC, Section II.A [Bankr. Docket No. 104] (the "Disclosure Statement").

This case stems from years of litigation between the Debtor and SMCC, which resulted from the Debtor's decision to stop performing its obligations under the

---

debtor's motion to dismiss the appeal on the basis of equitable mootness; not an appeal of a bankruptcy court's confirmation order. 662 F.3d 315 (5th Cir. 2011).

[2] Unless otherwise identified, the Debtor has included the abbreviation "Bankr." to cite to the Bankruptcy Appeal Record [Docket No. 7], consisting of docket entries from *In re Smoky Mountain Country Club Property Owners' Association*, Case No. 19-10286 (Bankr. W.D.N.C. 2019).

[3] Amended and Restated Declaration of Covenants, Conditions and Restrictions, and Reservation of Easements for Smoky Mountain Country Club dated October 15, 1999, and recorded on November 23, 1999.

Clubhouse Dues Agreement that requires Debtor to assess, bill, and collect Clubhouse Dues from Owners and remit the Clubhouse Dues so collected to SMCC, the owner of the Clubhouse Use Facilities. *See* Declaration, Art. II, §4. The litigation surrounding the Clubhouse Dues Agreement (the "Clubhouse Dues Litigation") culminated in a judgment entered in favor of SMCC against the Debtor in the amount of $7,071,054.46, consisting of (a) the principal sum of $5,149,921.94, plus (b) prejudgment interest on the principal sum at the legal rate from September 27, 2014, through May 28, 2019, in the amount of $1,921,132.52 (the "State Court Judgment"), from which Debtor filed the State Court Appeal.

SMCC began collection efforts on the State Court Judgment against the Debtor, leading to the Debtor's bankruptcy filing. Disclosure Statement, Sections I, II.A. The Debtor proceeded through the Chapter 11 Case, using the bankruptcy process to negotiate a settlement with SMCC for payment of the State Court Judgment. Tr. of Proceedings before the Honorable George R. Hodges, United States Bankruptcy Judge, Dec. 18, 2019, 95:9-23 [Bankr. Docket No. 283] (the "Transcript").

The Plan came before the Bankruptcy Court for confirmation on December 18, 2019 (the "Confirmation Hearing"). Transcript, 112:14-24. Prior to the Confirmation Hearing, Appellants filed objections to confirmation of the Plan. *See* Amended Objection to Chapter 11 Plan, filed by Ronnie C. Hedgepeth, Jr. and Shira

Hedgepeth [Bankr. Docket No. 216] (the "Hedgepeth Objection"); the Objection to Confirmation of Plan of Reorganization of Smoky Mountain Country Club Property Owners' Association, Inc. and Creditor SMCC Clubhouse, LLC filed by Robert L. Young, and Mary H. Young [Bankr. Docket No. 217] (the "Young Objection", with the Hedgepeth Objection, the "Objections"). The Objections only specifically addressed 11 U.S.C. 1123(a)(5) (the adequate means of implementation requirement), 11 U.S.C. 1129(a)(3) (good faith requirement), and 1129(b) (fair and equitable treatment of *creditors* requirement). Hedgepeth Objection, ¶11, 23, 31; *See* Young Objection, ¶8.[4] The Objections did not specifically identify either "feasibility" or 11 U.S.C. 1129(a)(11) (the feasibility requirement). *See generally,* Objections.

To the extent they addressed feasibility of the Plan in substance, it was only to argue a risk of default on the Debtor's obligations to SMCC due to potential nonpayment of assessments by Owners. If Debtor faithfully performs its obligations under the Plan to assess, bill and collect Clubhouse Dues from Owners and to pay the amount of the Clubhouse Dues collected to SMCC, there is no "risk of default" if Clubhouse Dues are not paid because Debtor's obligation is only to pay SMCC the amount actually collected. In addition, "risk of default" was eliminated through

---

[4] The Young Objection cites Sections 1123 and 1129 of the Bankruptcy Code, but argues only that the Plan was not "proposed in good faith, is not fair and equitable to the members and doesn't provide for a complete resolution of the POA's obligations and responsibilities to its members." Id.

a Plan amendment which assigned to SMCC the Debtor's right to receive assessments from Owners in default on the payments for $1,500,000 principal payment on the State Court Judgment under Paragraph 4.4.3 of the Plan as well as the rights and risks associated with collection thereof. *See* Confirmation Order, 18 at ¶¶ 3(vi)-(vii).

During the Confirmation Hearing, Terrence Walters, a board member of the Debtor, testified that he viewed the Plan and its settlement with SMCC as "more than fair and reasonable." Transcript, 112:18-21. Mr. Walters came to this conclusion through his negotiations with a representative of SMCC and discussions with his professionals, including the Debtor's attorneys. Transcript, 131:5-14. He had been informed by the Debtor's appellate attorneys that the State Court Appeal only had a thirty-five percent to forty percent chance of success and would take at least a year. Transcript, 97:18-24; 98:2-4. And even if the State Court Appeal was successful, the result would be another remand, meaning in the best-case scenario, the pre-bankruptcy litigation, which had already been pending over five years, would continue. Transcript, 98:17-23.

The Debtor also consulted with its bankruptcy counsel related to several issues in the bankruptcy case, but most importantly, whether the Debtor could emerge from the case without a settlement with SMCC. Transcript, 99:7-24. Finally, the Debtor conferred with its corporate counsel to determine its powers to satisfy the State Court

Judgment or any settlement with SMCC. Transcript, 99:25; 100:1-21. Based on those discussions, the Debtor began settlement negotiations with SMCC. Transcript, 101:8-24. Throughout the negotiations, the Debtor considered concerns raised by its Members in conjunction with its goal to get the best deal it could. Transcript, 104:5-20; 180:1-16.

Ultimately, the settlement struck for payment of the State Court Judgment between the Debtor and SMCC, and documented in the Plan, was in the best interests of the Debtor. Transcript, 112:20-24. Appellants' sole witness during the Confirmation Hearing agreed. Transcript, 170:2-19. Specifically, the Plan resolves the State Court Judgment by requiring the Debtor to levy assessments for unpaid Clubhouse Dues through December 31, 2019, and future Clubhouse Dues. Plan, § I.C.1. Payments assessed, billed, and collected by the Debtor are then remitted to SMCC through the remaining term of the Declaration, which runs through 2049. *Id*. In addition, SMCC receives from the Debtor a principal payment of $1,500,000 payable in three equal installments of $500,000 toward the principal of the State Court Judgment. *Id*. The source of funding for the Debtor to make the Plan payments to SMCC are assessments levied on the Owners, who are obligated to pay such assessments under the Declaration and Act—not the Plan.

The Court agreed that the Plan encompassing the payment of the State Court Judgment over 30 years, rather than immediately, was in the best interests of the

Debtor, finding "the settlement is well within reason and does a good job of resolving many, many of the divisive issues." Transcript, 181:16-22. Additionally, the Court noted "the board got the best deal that they were going to get and it is a good deal for them and the creditors and the estate." Transcript, 181:23-25; 182:1-9.

## SUMMARY OF ARGUMENT

Appellants have waived all of their arguments on appeal, either because they failed to raise them or because they are not raised properly in this appeal. The only requirements of confirmation that Appellants explicitly challenge in their brief [Doc. No. 8] ("Appellants' Brief) are the Plan's feasibility and the adequacy of the Plan's means of implementation. But the Bankruptcy Court had ample evidence on which to base its findings on those issues, including the Debtor's substantial assessment authority under the Declaration and the Act and the Debtor's ability to control its performance under the Plan, leading to minimal default risk.

Further, Appellants lack standing to raise arguments related to the Clubhouse Dues Agreement, the State Court Litigation, the State Court Judgment, and the settlement for payment of the State Court Judgment by Debtor under the Plan, because Appellants were and are not parties thereto. Even if Appellants had standing to make their arguments, or had not waived them, the arguments in Appellants' Brief do not meet the high bar necessary to reverse the Confirmation Order. Many of

Appellants' arguments challenge points of fact and law established in the Clubhouse Dues Litigation.

Appellants' argument regarding termination of the Clubhouse Dues Agreement was raised below only in the context of "good faith," not feasibility, and any alleged termination is irrelevant in light of the new agreement between SMCC and the Debtor embodied in the Plan. Appellants' argument regarding executory contracts was not raised below at all. The argument that the Owners have a defense to the Debtor's assessments because the provisions in the Clubhouse Dues Agreement are allegedly personal covenants is irrelevant due to the Debtor's independent assessment authority under the Declaration and Act. The special assessments issue, though raised in the Bankruptcy Court, was specifically rejected. The Bankruptcy Court also rejected Appellants' allegations that the Plan in unfair to the Debtor's Members. Finally, Appellants' argument regarding condominium ownership is new, unfounded and irrelevant to confirmation.

The Bankruptcy Court's decision to enter its Confirmation Order was well-supported by the evidence and the Bankruptcy Code, as described in detail below. Therefore, the Court should dismiss the appeal due to its procedural deficiencies, or affirm the Bankruptcy Court's Confirmation Order because it is supported by substantial evidence and in the best interest of the Debtor, its creditors and other parties in interest.

# ARGUMENT

## I. Appellants Waived or Abandoned their Arguments on Appeal

### A. Appellants Failed to Properly Designate Issues for Appeal Pursuant to Rule 8009

As a threshold matter, this Court must determine the specific issues to be considered on appeal. Under Rule 8009 of the Federal Rules of Bankruptcy Procedure, an appellant must submit "a designation of the items to be included in the record on appeal and a statement of the issues to be presented." Fed. R. Bankr. P. 8009 (a)(1)(A); *Dunlap*, 2017 U.S. Dist. LEXIS 10338 at *5 (this requirement "helps provide the appellee with the scope of the appeal so that the appellee can adequately address and argue the appeal."); *Sundale, Ltd. v. Ocean Bank*, 441 B.R. 384, 387 (S.D. Fla. 2010) (purpose of Rule 8009 "is to provide the reviewing court with an adequate basis for evaluating the appellant's claims on appeal and to identify the portions of the testimony below that should be included in the record on appeal.").

Appellants designated three issues for appellate review:

1. Whether the Bankruptcy Court erred in confirming the Plan of Reorganization where the Plan failed to comply with all applicable provisions of Title 11 as required by 11 U.S.C. 1129(a)(1)?

2. Whether the Bankruptcy Court erred in confirming the Plan of Reorganization where the Plan was not proposed in good faith by its proponents as required by 11 U.S.C. 1129(a)(3)?

3. Whether the Bankruptcy Court erred in confirming the Plan of Reorganization where the Plan is not feasible as required by 11 U.S.C. 1129(a)(11)?

[Bankr. Doc. No. 296]. Appellants' Brief does not include any of the three designated issues, and instead introduces four new issues.[5] None of these new issues are easily traceable to the issues previously designated, and none are unambiguously related to an element of confirmation. None identify a discrete legal or factual issue for review by this Court.

An appellant's failure to properly designate an issue for appeal in a Rule 8009 statement can operate as a waiver of that issue. *See e.g., Dunlap*, 2017 U.S. Dist. LEXIS 10338, at *4-5 (holding that appellant's issues were waived on appeal where they were identified in its designation but not addressed in appellant's brief, as well as issues that were contained in appellant's brief but not presented in its designation); *Bangert v. McCauley (In re McCauley)*, 105 B.R. 315, 320 (E.D. Va. 1989) (concluding that three issues were waived on appeal because appellant only argued them in her brief and they were not mentioned in her Designation and Statement of the Issues); *Zimmermann v. Jenkins (In re GGM, P.C.)*, 165 F.3d 1026, 1031-32 (5th

---

[5] **(1)** Whether the bankruptcy court erred in confirming a Plan where the source of funding is based on the Association's assumption of a contract which had been terminated pre-petition? **(2)** Whether the bankruptcy court erred in confirming a Plan proposed by self- interested parties which imposes on the Owners obligations to pay an alleged debt of the Association where there has not been a determination that the Owners have such a legal responsibility and where the effect of the Plan is to preempt the Owners' right to challenge the proposed assessments and defend against collection? **(3)** Whether the bankruptcy court erred in confirming a Plan where the Association agreed to assess Owners for a payment to SMCC Clubhouse without complying with the Special Assessment provisions of Article I, Section 30 of the Declaration? **(4)** Whether the bankruptcy court erred in confirming a Plan which conflicts with prior state court rulings regarding the condominiums?

Cir. 1999) (holding that appellant waived issue on appeal by failing to include it in his statement of issues to be presented on appeal); *In re Snap-On Tools, Inc. v. Freeman (In re Freeman)*, 956 F.2d 252, 255 (11th Cir. 1992) (declining to consider issues on appeal that were not included in the Designation of the Record on Appeal and were not inferable from the issues properly raised).

An appellant fails to properly designate an issue if it is not designated in the Rule 8009 statement, or if the issue cannot be inferred from the issues that were designated. *Dunlap,* 2017 U.S. Dist. LEXIS 10338, at *9 (citing *Videsh Sanchar Nigam Ltd. v. Startec Global Communs. Corp. (In re Startec Global Commc'ns Corp., et al*.), 300 B.R. 244, 249 (D. Md. 2003)). This Court has found that an issue is inferable where it (1) is raised in the bankruptcy court; (2) does not require the court to make independent factual findings; and (3) presents no surprise to the Appellee. *Id.* (citing *Cumbo v. McDow*, 2006 U.S. Dist. LEXIS 89624, *2 (E.D. Va. Dec. 12, 2006)) (the "*Dunlap* test").

In the Fourth Circuit, as in this Court, it is well-established that "[i]f an appellant violates one of the rules of bankruptcy procedure, the district court may dismiss the appeal." *In re Cabrera v. Home Loan Corp.*, 2007 U.S. Dist. LEXIS 94399, *7 (W.D.N.C. 2007) (citing *In re Weiss*, 111 F.3d at 1173, and concluding dismissal was warranted under FRBP 8001(a) where appellant "prejudiced [the] proceedings, and particularly the Appellee" by failing to present record "necessary

to review the factual findings of the Bankruptcy Court," after considering issue *sua sponte*); *Dunlap,* 2017 U.S. Dist. LEXIS 10338, at *10 (dismissing appeal from bankruptcy court where appellant "waived all his arguments on appeal, by failing to adequately designate them or failing to address them in his brief"). In light of Appellants' layered violations of the rules of bankruptcy procedure, the Court should exercise its discretion and dismiss this appeal.

Here, Appellants' three designated issues--that the Plan failed to comply with all applicable provisions of Title 11, that the Plan was not proposed in good faith, and that the Plan is not feasible--do not appear in the Statement of Issues in Appellants' Brief. *See* Appellants' Brief, 1-2. The issue of good faith is not addressed at all in Appellants' Brief and is therefore waived. The issue of noncompliance with Title 11 is addressed with a single citation to the applicable statute, 11 U.S.C. 1129(a)(1), but Appellants do not identify any provision of Title 11 that the Plan fails to comply with, and the issue is therefore waived. *See* Appellants' Brief, 12. The issue of feasibility is not addressed in the stated issues but is addressed in Appellants' argument, however Appellants did not make any of the same arguments regarding feasibility in the Bankruptcy Court and therefore the issue is waived.

Appellants' four stated issues in their brief are not inferable from the designated issues. *See* Appellants' Brief, 1-2; *cf.* Designation, 3. It is difficult to

determine from which of the designated issues the stated issues could be inferred. The *Dunlap* court's discussion is instructive. There, the court determined that appellant's stated and briefed issue--"Did the Court err in declining to find that the interest rate and amount of interest paid constituted an undue hardship under the Brunner test?"--was not inferable from appellant's designated issue--"Did the Plaintiff plead sufficient facts to support the elements necessary for a hardship discharge under 11 U.S.C. § 523(a)(8)?". The court reasoned that "a specific issue [can] not be inferred from a blanket statement—doing so would 'thwart the purpose of the Bankruptcy Rules.'" Here, all four of Appellants' stated issues are too specific to be inferred from the blanket statements made in the designated issues and are therefore waived.

Additionally, Appellants' stated and briefed issues are not inferable under the three factor *Dunlap* test. With respect to the first factor, Appellants failed to raise many of their briefed issues in the Bankruptcy Court, and none were presented in the same context. Although each of the four sections of Appellants' argument conclude that the Plan is "not feasible," Appellants did not explicitly address feasibility in their objections to confirmation, and Appellants did not raise any of their briefed issues as issues of feasibility at the confirmation hearing. For example, the issue regarding real and personal covenants and the enforceability of Members' obligation to pay assessments was only addressed in the context of Appellants'

Motion for Relief from Stay, in which Appellants asked permission to have the issue resolved in another proceeding, in another court;[6] they did not raise the issue in the Bankruptcy Court in the context of confirmation. Additionally, Appellants' briefed issues regarding implementation were not raised as such in the Bankruptcy Court--the Board's purported termination of the Clubhouse Dues Agreement was identified as an unresolved "problem" bearing on good faith and fairness, and the executory contract argument was not raised below at all. *See* Young Objection, ¶13, 13(e).

Second, additional factual findings would be required to resolve Appellants' briefed issues, including whether any of Appellants' alleged defenses are viable, but which Appellees contend would not establish that the Bankruptcy Court erred in any of its factual findings or conclusions.

Third, because none of Appellants' briefed issues were properly designated and were not addressed in the same context below; Appellees were surprised by all of them. The shortcomings of Appellants' Brief, as discussed below, only add to that surprise. This Court should exercise its discretion and dismiss this appeal.

### B. Appellants' Brief is Not in Compliance with Federal Rule of Bankruptcy Procedure 8014 and Should Not be Considered

---

[6] This Motion is not included in the Record on Appeal. It is referenced in a section of the Hedgepeth Objection titled "The Plan does not Satisfy Section 1129(b)," which deals with fairness to creditors. Hedgepeth Objection, ¶34.

In addition to Rule 8009, Bankruptcy Rule 8014 is designed to give the district court and opposing parties notice of the aspects of a bankruptcy court decision that the appeal targets. In the 4th Circuit, "issues raised for the first time on appeal generally will not be considered", and even when properly preserved issues are raised on appeal, they must be raised in the opening brief. *See Karpel v. Inova Health Sys. Servs.*, 134 F.3d 1222, 1227 (4th Cir. 1998); *Carter v. Lee*, 283 F.3d 240, 252 n. 11 (4th Cir. 2002). To raise and address an issue in accordance with Bankruptcy Rule 8014, an appellant's brief must, among other requirements, identify rulings for review and include citations to the record and authorities on which appellant relies. *Herrera v. Finan*, 709 Fed. Appx. 741, 746 (4th Cir. 2017).

An appellant's "[f]ailure to comply with the specific dictates of Bankruptcy Rule 8014 with respect to a particular claim triggers abandonment of that claim on appeal." *Edwards v. City of Goldsboro*, 178 F.3d 231, 241 n.6 (4th Cir. 1999); *see Johnson v. United States*, 734 F.3d 352, 360 (4th Cir. 2013) (citing Rule 28 and concluding that appellant waived or abandoned review where he had "not challenged the basis for the district court's decision in any meaningful way"); *Carpet Super Mart, Inc. v. Benchmark International Co. Sales Specialist, LLC*, 789 Fed. Appx. 379 (4th Cir. 2020) (where an appellant makes only a passing reference to a claim in the argument section of its opening brief, the appellant has abandoned the challenge on appeal. Fed. R. App. P. 28(a)(8)(A)); *United States v. Conrad*, 760 Fed.

Appx. 199, 204-205 (4th Cir. 2019) (holding appellant abandoned argument by including "no citations to 'parts of the record'" to establish the relevance of his contentions).

In this case, Appellants' opening brief is substantially noncompliant with the requirements of Bankruptcy Rule 8014. In violation of Bankruptcy Rule 8014, Appellants fail to "identif[y] the rulings presented for review, with appropriate references to the record." Fed. R. Bankr. P. 8014 (a)(6). Appellants' Brief does not identify any discrete rulings for review, rather, each of Appellants' designated, stated, and briefed issues assigns error only generally to the Bankruptcy Court's confirmation of the Plan. *See* Appellants' Brief, 1-2. Likewise, Appellants' Brief does not provide an appropriate reference to the record for any rulings. Fed. R. Bankr. P. 8014(a)(8). The argument of Appellants' Brief contains only *one* citation to the Bankruptcy Court transcript. Appellants' Brief, 22. Appellants cannot meet their burden to demonstrate error on the part of the Bankruptcy Court because they fail to engage with the basis for the Bankruptcy Court's findings in any meaningful way. The absence of citations highlights the fact that essentially all of Appellants' arguments were raised for the first time in this Court. Because Appellants arguments were either new or not presented in accordance with Bankruptcy Rule 8014, Appellants have waived or abandoned all of their arguments on appeal. As there is not an issue on appeal for this Court to review, the Court should decline to consider

this appeal. Alternatively, the Court should affirm the Bankruptcy Court's Confirmation Order, because Appellants fail to overcome the strong presumption in favor of the Bankruptcy Court's findings, for the reasons that follow.

## II. Appellants Lack Standing

Appellants lack Article III standing and bankruptcy standing to appeal the Confirmation Order. *See* Appellees Smoky Mountain Country Club Property Owners' Association, Inc., And SMCC Clubhouse, LLC, Memorandum Of Law In Support Of Their Motion To Dismiss Appeal. [Doc. No. 10] They also lack prudential standing to challenge the validity of the Clubhouse Dues Agreement in the Declaration, the State Court Judgment, and the Settlement Agreement in the Plan for payment thereof.  The prudential limitation relevant to this case is the doctrine of third-party standing. As the Supreme Court held in *Warth v. Seldin*, a "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." 422 U.S. 490, 499, 95 S. Ct. 2197, 2205, 45 L. Ed. 2d 343 (1975). When a litigant is neither party to nor an intended beneficiary of a contract, then any claim brought under that contract must belong to a third party. *Deutsche Bank Nat'l Tr. Co. v. FDIC*, 405 U.S. App. D.C. 130, 135 n.5, 717 F.3d 189, 194 (2013).

Here, Appellants were not parties to the Clubhouse Dues Agreement between Debtor and SMCC or the Clubhouse Dues Litigation, and were not parties to, or

named in, the State Court Judgment. Likewise, they are not parties to the agreements between the Debtor and SMCC set forth in the Plan establishing how the Debtor will pay the State Court Judgment. To the extent Appellants are third party beneficiaries of the Clubhouse Dues Agreement between Debtor and SMCC, or Settlement Agreement for payment of the State Court Judgment, they are not seeking to enforce the terms of those contracts, rather they seek to invalidate those agreements. Because third party beneficiaries only have a legally protected interest in the enforcement of such contracts, insofar as they wish to be heard on the specific question of the contracts' or judgment's legitimacy, they are effectively seeking to enforce the rights of third parties, which the doctrine of prudential standing prohibits. *See id.*

### III.     The Bankruptcy Court Correctly Concluded that The Plan Satisfies the Requirements for Confirmation Under 11 U.S.C. § 1129

In order to reverse the Bankruptcy Court's Confirmation Order, this Court must find that the Bankruptcy Court was clearly erroneous in its factual determinations regarding the adequacy of the Plan's means of implementation or the Plan's feasibility. In this appeal, the Court must defer to the Bankruptcy Court's findings, unless clearly erroneous, that Appellees' evidence was sufficient to establish that their Plan is feasible and has an adequate means of implementation. *See In re Wood*, 1991 U.S. Dist. LEXIS 20083, at *11-12 (W.D. Va. Nov. 11, 1991). Here, the Bankruptcy Court conducted the confirmation hearing and was in the best position to evaluate the weight and credibility of the testimony offered there. *See*

*Gouge,* 320 B.R. at 583 (due regard must be given to the Bankruptcy Court's assessment of the credibility of the witnesses); *Gibbs*, 474 F.2d 1341 (The Fourth Circuit interprets Fed. R. Civ. Pro. 52(a) "to mean that the [lower] court's findings are 'presumptively correct.'").

Based on the evidence in support of confirmation presented at and in connection with the Confirmation Hearing, the Bankruptcy Court determined that Appellees' met their burden to establish by a preponderance of the evidence that the Plan satisfies all required elements of Section 1129 of the Bankruptcy Code. The Bankruptcy Court's factual findings regarding implementation, feasibility, good faith, and the reasonableness of the settlement were all well-supported by the evidence, as described below.

## A. Debtor's Assessment Authority Provides an Adequate and Proper Means of Implementation

Section 1129(a)(1) of the Bankruptcy Code requires that a plan comply with "the applicable provisions of [Title 11]." These provisions include sections 1122 and 1123 of the Bankruptcy Code, governing the classification of claims and interests and the contents of a plan of reorganization. *In re Toy & Sports Warehouse, Inc.*, 37 B.R. 141, 149 (Bankr. S.D.N.Y. 1984).

Section 1123(a)(5) of the Bankruptcy Code requires that a plan "provide adequate means for the plan's implementation," and sets forth several examples of such adequate means. *See, e.g.*, 11 U.S.C. § 1123(a)(5)(B) ("transfer of all or any

part of the property of the estate"), 11 U.S.C. § 1123(a)(5)(F) ("cancellation or modification of any indenture or similar instrument"). Section 1123(a)(5) is an "empowering statute" that "does not simply provide a means to exercise the debtor's pre-bankruptcy rights; it enlarges the scope of those rights". *In re FCX, Inc.*, 853 F.2d 1149, 1155 (4th Cir. 1988); *In re Renegade Holdings, Inc.*, 429 B.R. 502, 517 (Bankr. M.D.N.C. 2010).

Appellees established at the Confirmation Hearing that the Plan includes numerous provisions to facilitate the Plan's implementation. *See generally*, Transcript, 53:13-57:15. In its Confirmation Order, the Bankruptcy Court properly found that the Plan provides adequate and proper means for implementation of the Plan, and that the Court finds that the Debtor and Reorganized Debtor would be likely to succeed in any litigation challenging the right to assess Members for amounts required to be paid to SMCC under the Plan in payment of the State Court Judgment pursuant to the Declaration and the Act. *See*, *Williams v. Biesecker*, No. COA10-1206, 2011 N.C. App. LEXIS 1005, at *10-14 (Ct. App. May 17, 2011) (holding POA "not obligated to adhere strictly" to governing documents because the Act provides separate basis to assess, bill and collect for items in question) (unpublished). Thus, the Debtor is authorized to assess its Members to fund the payments to SMCC required under the Plan and the assessments provide an adequate means of implementation as required under 11 U.S.C. §1123(a)(5).

Where there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous. *Anderson*, 470 U.S. at 574. Because the Declaration and Act each independently authorize Debtor to assess, collect, and remit the required Plan payments to SMCC, Appellants would need to demonstrate that Debtor lacks assessment authority under both the Act and the Declaration to establish that the Bankruptcy Court clearly erred in finding that the Plan has adequate means of implementation. Since Appellants do not challenge Debtor's authority under the Act, and because Appellants have not preserved their ability to make that argument in their reply, the Bankruptcy Court's determination that the Plan has an adequate means of implementation should be affirmed. *Brown v. Nucor Corp.*, 785 F.3d 895, 918 (4th Cir. 2015) (failure of a party in its opening brief to challenge an alternate ground for a district court's ruling waives that challenge).

## B. The Plan is Feasible Because Debtor's Ability to Control its Own Performance Makes the Chances of Success Reasonably Likely

Section 1129(a)(11) of the Bankruptcy Code evaluates the feasibility of a proposed plan of reorganization. This element requires as a precondition to confirmation that a court determine that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan…." The feasibility test contemplates the probability of actual performance of the provisions of the plan. *In*

*re Bartlett*, 92 B.R. 142, 144 (Bankr. E.D.N.C. 1988). While a guarantee of success is not required, a debtor must establish a "reasonable assurance" of its ability to successfully carry out the plan that it proposes. *In re Murray*, 2012 Bankr. LEXIS 1281, at *7 (Bankr. E.D.N.C. 2012) (citing *In re Bartlett*, 92 B.R. at 144). The test is whether the things to be done after confirmation can be done as a practical matter under the facts. *In re Bartlett*, 92 B.R. at 144.

Since the Plan requires Debtor to "assess, bill and collect" Clubhouse Dues from Owners, and to pay <u>only</u> the amount of Clubhouse Dues collected to SMCC, the Debtor controls its own performance relating to the Clubhouse Dues. As set forth in Section 4.4.3(vi) of the Plan, Debtor assigned to SMCC its right to receive delinquent assessments from each Member for his pro rata share of the $1.5 million principal payment on the State Court Judgment. *See* Confirmation Order, 18. In exchange, SMCC bears the sole risk of collection, and nonpayment of any delinquent assessments by Members does not constitute a default under Section 4.4.6 of the Plan. *Id*. at 19. As part of the assignment, SMCC is entitled to exercise all remedies under the Act that would have been available to the Debtor. *Id*. at 18. The changes in the Plan substantially enhance its prospect of success because all of Debtor's obligations under the Plan are within its control. Debtor's obligation is to assess and collect Clubhouse Dues from Owners and to remit the amount of Clubhouse Dues

so collected to SMCC. There is no default if Debtor is unable to collect Clubhouse Dues from any one or more Members.

As set forth in the Confirmation Order, the Bankruptcy Court determined that Section 1129(a)(11) of the Code is satisfied by the Plan and confirmation of the Plan is not likely to be followed by a chapter 7 liquidation of the Debtor. Confirmation Order, 13-14. The Disclosure Statement and the evidence and exhibits proffered or adduced at the Confirmation Hearing (1) are persuasive and credible, (2) have not been controverted by other evidence and (3) establish that the Plan is feasible. The Court is not required to find that the Plan is guaranteed to succeed in order to find that it is feasible, only that it presents a realistic, workable framework. *See In re American Capital Equipment, LLC*, 688 F.3d 145, 156 (3d. Cir. 2012).

### a. *Debtors have Authority under the Declaration and the Act to Assess Members*

Appellants' arguments seeking to invalidate the Clubhouse Dues Agreement are irrelevant to the Plan's feasibility, as well the adequacy of its means of implementation, because the Debtor has independent authority to assess Members pursuant to its authority under the Act.

The Act applies to all planned communities located within the State and vests broad management authority in the property owners' association of a planned community ("Association"). Section 3-102 of the Act authorizes an Association to exercise any power "necessary and proper for [its] governance and operation." This

power is in addition to the authority granted to an Association in its Declaration, which "form[s] the basis for the legal authority for the planned community to act". *Conleys Creek Limited Partnership v. Smoky Mountain Country Club Property Owners Association, Inc.*, 255 N.C. App. 236, 246, 805 S.E.2d 147 (2017), disc. rev. denied, 370 N.C. 695, 811 S.E.2d 596 (2018) (**"*Smoky*"**); N.C.G.S. § 47F-3-102.

The Declaration and Act provide separate bases upon which an Association is authorized to act. These sources of authority also constitute "independent methods by which an Association may enforce its covenants--the first, by the mechanisms established in the homeowners' association's declarations, and the second, by the Planned Community Act." *Bodine v. Harris Village Property Owners Association*, 207 N.C. App. 52, 61, 699 S.E.2d 129, 135 (2010). The Act and Declaration may, in turn, contain multiple procedures by which an Association may enforce its covenants.

The Debtor's Declaration specifically grants Debtor "the power to levy and collect assessments, including the Clubhouse Dues, against members of the Association." Declaration Art. III, §2(2). Article II, section 4 of the Declaration (the Clubhouse Dues Agreement) further provides:

> Upon completion [of the Clubhouse Use Facilities], Declarant shall grant to the Association and the Owners … a perpetual nonexclusive right to use the Clubhouse Use Facilities, and each Owner, in consideration thereof, shall pay the Clubhouse Dues to the Association, and the Association shall pay all of the Clubhouse Dues collected from Owners to Declarant. The

> obligation of each Owner to pay Clubhouse Dues to the
> Association … shall not be dependent on such Owner's actual
> use of the Clubhouse Use Facilities. The Association shall bill
> and collect the Clubhouse Dues from each Owner on a current
> basis, and on or before the last day of each calendar month the
> Association shall pay the total collected amount of Clubhouse
> Dues to Declarant.

Therefore, as the North Carolina Court of Appeals has determined with respect to the specific provisions of this Debtor's Declaration: "the [] Declaration has expressly authorized the Association to assess its homeowners the Clubhouse Dues." *Smoky*, 255 N.C. App. at 246. In *Smoky*, the Court of Appeals determined that, because the Clubhouse Dues were established incident to a contract with SMCC to provide an amenity for the homeowners, the Debtor was authorized "to assess the homeowners for the costs associated with the contract." *Id.* at 247. As such, the Debtor's authority to assess Members for and collect the Clubhouse Dues includes the authority to assess Members for and collect amounts necessary to pay a Judgment obtained for nonpayment of Clubhouse Dues.

In addition to the Debtor's authority under the Declaration to assess members the costs associated with a contract—including payment of a Judgment for breach of that contract—the Debtor's assessment authority is enhanced by the provisions of the Act. N.C. Gen. Stat. §47F-3-115 provides that "Assessments to pay a judgment against the association may be made only against the lots in the planned community at the time the judgment was entered, in proportion to their common expense

liabilities." N.C. Gen. Stat. §47F-3-102(2) in turn provides that an association may "collect assessments for common expenses from lot owners." "Common expenses means expenditures made by or financial liabilities of the association, together with any allocations to reserves." N.C. Gen. Stat. §47F-1-103(5). The State Court Judgment is a financial liability of the Debtor and is therefore a "common expense" for which the Debtor has the authority to assess and collect from the Owners, and therefore not a special assessment as argued by Appellants.[7]

Additionally, N.C. Gen. Stat. §47F-3-102(10) provides that an association may "(i)mpose and receive any payments, fees, or charges for the use, rental, or operation of the common elements other than the limited common elements and for services provided to lot owners." In *Smoky*, the Court of Appeals held that SMCC's role of providing access to and maintaining the Clubhouse Use Facilities is a "service" under N.C. Gen. Stat. §47F-3-102(10) for which the Debtor is required and authorized to assess, bill and collect Clubhouse Dues for payment to SMCC. Thus, the Judgment is a "payment" that the Debtor may "impose and receive" for the "service" providing the Clubhouse Use Facilities. *Smoky*, 255 N.C. App. at 247.

---

[7] The "special assessment" argument was made by Appellants in their objections to confirmation, and the Bankruptcy Court rejected it. As the Bankruptcy Court found in the Confirmation Order: "Debtor and Reorganized Debtor are not required to make a Special Assessment under Article 1, Section 30 of the Declaration or otherwise, because independent authority to assess Members for amounts required for the Debtor or Reorganized Debtor to pay SMCC Clubhouse in satisfaction of the Judgment exists under the Declaration and the North Carolina Planned Community Act, as set forth above, and Article 1, Section 30 of the Declaration is not applicable to payment of the Judgment under the Plan." Confirmation Order, 8.

Further, the Debtor may "[i]nstitute, defend, or intervene… in litigation… on matters affecting the planned community." N.C.G.S. §47F-3-102(4). The Debtor may also "make contracts and incur liabilities." N.C.G.S. §47F-3-102(5). As the Debtor has the power to sue and be sued, and to enter into contracts and incur liabilities, the Debtor must, therefore, have the power and authority to assess its Members to pay any such liabilities and judgments against the Debtor arising out of such litigation and contracts.

"There can be no doubt that the Association has the general corporate authority, and the legal obligation, to pay any judgments levied against it." *In re Manchester Oaks Homeowners Association, Inc.*, 2014 Bankr. LEXIS 951 (Bankr. E.D. Va. March 12, 2014). As Appellants have acknowledged, Debtor in the ordinary course of business sustains its operation through assessments levied against its members, who have voluntarily obligated themselves to pay such assessments by virtue of their ownership of property in the planned community. Hedgepeth Objection, ¶16-18. As state law expressly authorizes the Debtor to assess members in general, and in particular, for payment of a Judgment against the Association, the Debtor has the right to assess Members for amounts required to be paid under the Plan in order to satisfy the State Court Judgment against it.

### b. *Members' Alleged "Defenses" to Paying Assessments Are Irrelevant to Plan Confirmation*

Appellants appear to argue that the assessments contemplated by the Plan are invalid because no court has ruled that Members are obligated to pay Clubhouse Dues, and therefore the Plan is not feasible. The argument is disingenuous, because no court has ruled that Members are not obligated to pay Clubhouse Dues. However, the North Carolina Court of Appeals has stated in a discussion regarding these homeowners' duty to pay the Clubhouse Dues under this Declaration: "homeowners within a planned community are generally obligated to respect not only real covenants governing their property, but also to pay any dues which are assessed by their association." *Smoky*, 255 N.C. App. at 248.

The main argument made by Appellants is that the obligation of Members to pay Clubhouse Dues is a personal covenant that is unenforceable by Debtor, and they rely on *Midsouth Golf, Inc. v. Fairfield Harbourside Condominium Association, Inc.*, 652 S.E.2d 378 (2007), which held that under the common law of covenants running with the land, the promise by a time share owner to pay amenity fees for a revocable license to use recreational amenities is a personal covenant that does not run with the land and is unenforceable by a successor owner of the recreational amenities. The Court in *Midsouth* acknowledged that if the owner had an easement to use the recreational amenities, rather than a revocable license to use the recreational amenities, the promise to pay amenity fees would be a real covenant running with the land which is enforceable against the owner. Here, the Owners have

an enforceable obligation to pay Clubhouse Dues to SMCC under the Declaration, because they have a "perpetual nonexclusive right to use the Clubhouse Use Facilities" which is an easement. *Ring v. Mayberry*, 168 N.C. 563, 84 S.E.2d 846 (1915) (A covenant that "plaintiff and his heirs and assigns should have the perpetual use of the said stairway" is the grant of an easement, which runs with the land and was binding on assignees in fee.) More importantly, *Midsouth* was based on the common law, and not on the Act, under which Owners are obligated to pay assessments for Clubhouse Dues and the State Court Judgment. The Act supplants common law property principles. *Happ v. Creek Pointe Homeowner's Association*, 215 N.C. App. 96, 108-109, 717 S.E.2d 401, 409 (2011).

This argument is, in addition to being in error, irrelevant. First, the Members' obligation to pay assessments levied by the Debtor was not an obligation created by the Confirmation Order, but rather by the Declaration and the Act. Second, whether the Members are obligated to pay the assessments is not relevant to the Plan's feasibility, because Debtor is only obligated to pay Clubhouse Dues to SMCC that Debtor has collected from Owners, and there can be no default relating to assessments to pay the principal payment of $1,500,000 on the State Court Judgment under amended Plan section 4.4.3. Confirmation Order, 16.

Appellants contend that a Member's successful challenge to his or her obligation to pay Clubhouse Dues as provided under the Declaration would result in

the Plan being unfeasible. But Members' success on any of those claims or defenses is speculative, and even if an Appellant did succeed in challenging his or her obligation to pay the assessments contemplated by the Plan, it would not affect the Plan's feasibility. Debtor's obligation under the Plan confirmed by the Confirmation Order is to assess, bill and collect the Clubhouse Dues to pay the amount of Clubhouse Dues so collected to SMCC. If Debtor is unable to collect Clubhouse Dues from Owners, Debtor has no obligation to pay to SMCC any Clubhouse Dues that are not collected after good faith attempt to so collect. Clearly, it would be unlikely that the Plan is followed by liquidation or reorganization, as would be necessary for this Court to find that the Bankruptcy Court was clearly erroneous in its factual determination of feasibility. *See* 11 U.S.C. § 1129(a)(11); Confirmation Order, 16-19.

### c. *Clubhouse Dues Agreement Was Not Terminated Under Act Section 3-105; Regardless, the Settlement between the Debtor and SMCC in the Plan is a New, Valid Contract*

Appellants argue that the Plan cannot be implemented because the Clubhouse Dues Agreement between Debtor and SMCC was terminated pre-petition pursuant to N.C. Gen. Stat. § 47F-3-105. But each court that has considered this defense has rejected it. In the Clubhouse Dues Litigation, the Court of Appeals stated that Debtor could raise that defense at trial, "*so long as* the issue was properly preserved," but found that Debtor "did not plead or argue" in the trial court that the obligation had

been terminated. *Smoky*, 255 N.C. App. at 246 n.12, 250 (emphasis added). On remand, the trial judge excluded the potential defense. *See* Young Objection, ¶3. If applicable, N.C. Gen. Stat. § 47F-3-105 provides that a contract found "not bona fide" or that "was unconscionable to the lot owners at the time entered into" "may be terminated without penalty by the association." It is therefore a right that can only be exercised by the Debtor (the association), and Appellants have no standing to raise the issue of termination by the Association. As the Supreme Court held in *Warth v. Seldin*, a "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." 422 U.S. 490, 499, 95 S. Ct. 2197, 2205 (1975). Under the Plan, the Debtor confirms the present existence of the Clubhouse Dues Agreement. Plan, Paragraph 4.4.1 and Paragraph 8.5. Clearly, the Clubhouse Dues Agreement is presently in existence, and Appellants have no standing to contend otherwise. *See Taylor v. Volvo North America Corporation*, 339 N.C. 238, 261, 451 S.E.2d 618, 631 (1994) (a person, who is not a party to a contract, has no standing to contest the termination of that contract).

Regardless, it is irrelevant whether the Clubhouse Dues Agreement was terminated because Debtor and SMCC have entered a new agreement to settle the payment of, and the dismissal of the State Court Appeal from, the disputed State Court Judgment, and such agreement is embodied in the Plan. *See* Confirmation

Order, 10-11. Bankruptcy Rule 9019(a) provides that "[o]n motion by the trustee [or debtor in possession] and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). Appellants do not dispute the applicability of Bankruptcy Rule 9019, or the Bankruptcy Court's authority to approve the compromise and settlement as set forth in the Plan. Appellants do not allege that the Bankruptcy Court applied the wrong standards in determining whether to approve the settlement between the Debtor and SMCC set forth in the Plan under Bankruptcy Rule 9019, or incorrectly applied those standards to determine that the agreement should be approved. *See* Confirmation Order, 10-11. Appellants were not parties to the agreement in the Plan or the State Court Litigation which resulted in the State Court Judgment that the agreement resolves, and would lack standing to challenge the approval of that agreement even if they had attempted to do so. *See Warth*, 422 U.S. at 499. Because the Bankruptcy Court had the authority to approve the settlement and Appellants have not established that the agreement should not have been approved under Rule 9019, the Bankruptcy Court did not err in concluding that the Plan provides an adequate means to resolve the disputed debt and adequate means for implementation. *See* Confirmation Order, 6-9.

### d. *Arguments that the Clubhouse Dues Agreement constitutes an Executory Contract are irrelevant*

Appellants argue that the Clubhouse Dues Agreement constitutes an executory contract and that such contracts must be assumed post-petition under

Section 365 of the Bankruptcy Code. 11 U.S.C. § 365. That section provides that "the trustee [or debtor in possession pursuant to § 1107(a)], subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). The Declaration is not an "executory contract" that can be rejected. *Beeter v. Tri-City Prop. Mgmt Servs. (In re Beeter)*, 173 B.R. 108 (W.D. Tex. 1994).

Appellants argue that an executory contract that is terminated pre-petition cannot be assumed pursuant to Section 365, or at all. Appellants' Brief, 18. As described above, the Debtor did not validly terminate the Clubhouse Dues Agreement pre-petition. But the cases cited by Appellants support the Debtor's position. *See Coast Cities Truck Sales v. Navistar Int'l Transp. Co.*, 147 B.R. 674, 677 (D.N.J. 1992) (noting "executory contracts cannot be assumed pursuant to § 365 if they are *validly terminated* prior to a debtor's filing of a bankruptcy petition") (emphasis added); *In re Trigg*, 630 F.2d 1370, 1374 (10th Cir. 1980) (analyzing case under the Bankruptcy Act and noting a "contract that provides for termination on default of one party may terminate under ordinary principles of contract law even if the defaulting party has filed a petition under the Bankruptcy Act"). Ultimately, the validity or invalidity of the Clubhouse Dues Agreement is irrelevant. Debtor faced the financial liability of the State Court Judgment, and several provisions of the Act allow for the assessment of an association's members to pay for a judgment levied

against an association. Those state law provisions are independent of the Clubhouse Dues Agreement and support the Debtor's ability to assess its Members to pay the State Court Judgment.

### e. *The Payments on the State Court Judgment do Not "Double-Dip"*

Appellants question the "legitimacy and fairness" of the assessments by Debtor to pay the $1,500,000 principal payment on the State Court Judgment contemplated in the Plan because they do not apply based on when an owner purchased property or whether he had performed his obligation to pay Clubhouse Dues. But the General Assembly elected to allow a homeowners' association to impose assessments to satisfy a judgment of the association "against the lots in the planned community at the time the judgment was entered". N.C. Gen. Stat. § 47F-3-115(d). Because the assessments were made against each owner of record as of May 31, 2019, they are authorized under Section 3-115(d) of the Act, regardless of a Member's individual payment history or property purchase date.

Further, the assessments of Members necessary to fund the Debtor's obligations to SMCC under the Plan are fair to each Member. Some Members have paid no Clubhouse Dues since October 2014, some Members have paid some, but not all, Clubhouse Dues, and some Members have paid all Clubhouse Dues. Those Members who have paid all Clubhouse Dues will owe nothing under Section 4.4.1 of the Plan, those Members who have paid no Clubhouse Dues since October 2014

will owe approximately $7,300 per property under Section 4.4.1, and those Members who have paid some, but not all, Clubhouse Dues will owe something in between under Section 4.4.1 depending on the amount previously paid. All Members will be required to pay $3,066.67 per property per year for the next three years in assessments to fund the amounts due to SMCC under Section 4.4.3 of the Plan. *See* Confirmation Order, 16. Thus all Members will be required to pay the exact same amount – all past-due and future Clubhouse Dues, plus each member's pro-rata share of the three $500,000 installments on the State Court Judgment. As the Bankruptcy Court described the settlement: "it's manageable and it's certain and it's not devastating." Transcript, 182:18-24. The court did not err in concluding the Plan was feasible and fair to the Members, including Appellants.

Without confirmation of the Plan, each Member would be assessed approximately $50,000 to pay his pro rata share of the State Court Judgment, attorneys' fees and accrued interest and, upon confirmation of the Plan, each Member would, in addition to paying Clubhouse Dues, be assessed three annual installments of $3,066.67. Confirmation Order, 13-14. The Court found it more likely that Members will prefer to pay the assessments of $3,066.67 under the Plan, plus payment of Clubhouse Dues over a thirty-year period, rather than paying a lump sum assessment of $50,000.

Appellants did not rebut or contradict Appellees' evidence showing that the Plan was not likely to be followed by liquidation or further reorganization. Because the Bankruptcy Court's feasibility findings were supported by substantial evidence, its determination that the Plan is feasible should be affirmed.

## C. The Plan Was Proposed and Negotiated in Good Faith and Not By Any Means Forbidden By Law

Appellants contend that the Bankruptcy Court erred in confirming a Plan proposed by "self-interested parties" that "imposes on the Owners obligations" to pay an "alleged debt" of Debtor. These allegations are unfounded. They are also insufficient to raise the issue of good faith. *Belk, Inc. v. Meyer Corp.*, 679 F.3d 146, 152 n.4 (4th Cir. 2012) (holding that an issue was waived when a party included it in a heading, but did not otherwise develop the argument).

Section 1129(a)(3) requires a plan proponent to propose a plan "in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3). Good faith requires only a reasonable likelihood that the Plan will achieve a result consistent with the objectives and purposes of the Bankruptcy Code. *In re Eagan*, No. Chapter 11 12-30525, 2013 Bankr. LEXIS 260, at *10-11 (Bankr. W.D.N.C. Jan. 22, 2013) (citing *In re Madison Hotel Assocs.*, 749 F.2d 410, 425 (7th Cir. 1984)). In determining whether a plan has been proposed in good faith, courts look to whether the plan "was proposed with honesty and good intentions and with a basis for expecting that a reorganization can be effected." *The Argo Fund Ltd. v. Bd. of*

Directors of Telecom Argentina, S.A. (In re Bd. of Directors of Telecom Argentina, S.A.), 528 F.3d 162, 174 (2d Cir. 2008); *Travelers Ins. Co. v. Pikes Peak Water Co. (In re Pikes Peak Water Co.)*, 779 F.2d 1456, 1459 (10th Cir.1985) ("[I]s the plan feasible, practical, and would it enable the company to continue its business and pay its debts in accordance with the plan provisions").

This good faith inquiry is essentially a factual inquiry, in which the court evaluates a debtor's plan in light of "the totality of the circumstances" surrounding confirmation. *In re Jasik*, 727 F.2d 1379, 1383 (5th Cir. 1984). Although no single factor is determinative, one hallmark of good faith is the active involvement of creditor constituencies in the process of formulating the plan. *Eagan*, 2013 Bankr. LEXIS 260, at *10-11; *In re New Valley Corp.*, 168 B.R. 73, 81 (Bankr. D.N.J. 1994) (holding that good faith in proposing a plan permits "equitable considerations such as fundamental fairness to creditors to come into play.").

In addition to good faith, subsection (a)(3) requires that the plan's proposal comply with applicable non-bankruptcy law. *See In re General Development Corp.*, 135 B.R. 1002, 1007 (Bankr. S.D. Fla. 1991) (good faith centers on whether plan's proposal, as opposed to the contents of the plan, complies with other law). In the absence of any objection or allegation that a plan proponent has not complied with applicable law in proposing the plan, the Court has ample evidence to find that

section 1129(a)(3) is satisfied. *See id*.; *see also In re Texas Extrusion Corp.*, 844 F.2d 1142, 1160 (5th Cir. 1988); *In re Koelbl*, 751 F.2d 137, 139 (2d Cir. 1984).

Appellants offer no evidence that the Debtor's Board engaged in self-dealing or in any way acted in a self-interested manner. As Mr. Walters testified, he was not offered any benefit from SMCC to enter the settlement and he is obligated to pay the settlement assessments just like the other Members. Transcript, 104:21-25, 107:17-25, 108:1-8. The Bankruptcy Court found that Mr. Walters' conduct formulating and negotiating the Plan was "of the highest level of, of integrity and ability." Transcript, 182:16-17. The Plan does not impose any obligation on Appellants to pay Clubhouse Dues or their pro rata share of the principal payments of $1,500,000 on the State Court Judgment. *See* Plan, §IV.4.4. If there were no Plan, Appellants would still be obligated to pay those assessments under the Declaration and Act. *See* Confirmation Order, 6-9. Although the debt was disputed, the State Court Judgment is not "alleged"; it is real, the Debtor has to address it in any bankruptcy plan, and the Board exercised reasonable judgment to negotiate a settlement to resolve it. Appellants spill much ink to attack the North Carolina Superior Court and the jury that entered the State Court Judgment, but that is not on appeal here, nor was it on appeal in the Bankruptcy Court.[8]

---

[8] In any event, because Appellants were not parties to the Clubhouse Dues Litigation, they lack standing to challenge the State Court Judgment resulting from that litigation.

The Debtor's Board of Directors acted with due care and engaged in a reasonable inquiry of the Debtor's prospects for success in further litigation with SMCC and weighed appropriate considerations in deciding between continued litigation both in this Chapter 11 Case and the Appeal, or agreeing to the settlement with SMCC set forth in the Plan. Transcript, 104:5-20. Debtor, by and through its board, took reasonable steps to investigate the pros and cons of continuing litigation with SMCC both in and out of this Chapter 11 Case. *Id*. 97:7-25, 98:1-25, 99:1-3. The Debtor sought the advice of Debtor's trial and appellate counsel to reasonably inform itself of its options to challenge the State Court Judgment through state-court litigation. *Id*. Debtor was informed by appellate counsel that the Debtor's likelihood of prevailing on Appeal was in the range of thirty to forty percent, and would take at least a year to complete. *Id*. at 98:2-4, 97:18-24, 113:20-24. Debtor was also counseled that, even if the State Court Appeal were successful, the litigation with SMCC would be remanded to the trial court for further proceedings, lasting until some unknown future date. *Id* at 98:16-23. Debtor gave due consideration to the potential risks and benefits of its litigation options, including the complexity of the litigation, as evidenced by the long and tortured pre-petition litigation history, the effects of continued litigation on the Debtor's ability to resolve the title defects to the condominium units, and the cost of ongoing litigation. [Bankr. Doc. No. 235] ("Walters' Declaration"). Ultimately, Debtor concluded that engaging in further

litigation of SMCC's claims would be expensive, inconvenient and substantially uncertain to result in a better outcome for the Debtor. *Id.*; *See Maloy v. Sigmon (In re Maloy)*, 2009 Bankr. LEXIS 4010, *12 (Bankr. W.D.N.C. 2009) ("The very purpose of a settlement is to avoid the risks of litigation, … in the face of 'sharply contested and dubious issues[.]'").

There has been no showing that the Debtor's board engaged in self-dealing, or has gained any benefit that otherwise would not have been obtained. *See In re Stolrow's, Inc.*, 84 B.R. 167, 172 (B.A.P. 9th Cir. 1988) (holding that good faith in proposing a plan "also requires a fundamental fairness in dealing with one's creditors"). Debtor's settlement with SMCC will enable the Association to continue as a going concern and avoid the risks and uncertainty of litigation—in each case, to the benefit of the Members. *See In re PWS Holding Corp.*, 228 F.3d 224, 242 (3d Cir. 2000) (the "touchstone" of the good faith inquiry is "the plan itself and whether it will achieve a result consistent with the objectives and purposes of the Bankruptcy Code."); *Financial Sec. Assur. v. T-H New Orleans Ltd. Pshp. (In re T-H New Orleans L.P.)*, 116 F.3d 790, 802 (5th Cir. 1997) ("the purpose of the Bankruptcy Code is to give debtors a reasonable opportunity to make a fresh start."). Further, the Plan is not proposed by any means forbidden by law. As set forth in Section L(e) of the Confirmation Order and based on the authority described above, the Court determined that the Debtor and Reorganized Debtor have the authority to assess

Members for payments required under the Plan to SMCC of the State Court Judgment. *See* 7 Collier on Bankruptcy P 1129.02 (16th 2020) ("Although the statute requires denial of confirmation if the plan is 'proposed' by 'forbidden' means, most courts have focused not on the means of proposal, but on the means of implementation.").

Based on the foregoing, the Bankruptcy Court's determination that the Plan was proposed in good faith was based on substantial evidence. *See, e.g.*, Transcript, 182:10-17. The Fourth Circuit has held that "absent extraordinary circumstances, an appellate court should not disturb a fact-finder's credibility determinations." *In re Environmental Aspecs, Inc.,* 235 B.R. at 384. Because those circumstances are not present here--and because Appellants' waived any argument regarding good faith by failing to (1) use the words "good faith" or (2) refer to Section 1129(a)(3) anywhere in their brief, or (3) describe any bad faith conduct--the Bankruptcy Court's determination that the Plan was proposed in good faith and not by any means forbidden by law should be affirmed.

### D. Bankruptcy Court Reasonably Exercised its Discretion in Approving the Settlement

The Bankruptcy Court had authority to approve the proposed compromise and settlement set forth in the Plan, pursuant to Bankruptcy Rule 9019. *Key3Media Grp., Inc. v. Puliver.com Inc. (In re Key3Media Grp., Inc.)*, 336 B.R. 87, 92 (Bankr. D.

Del. 2005). Bankruptcy Rule 9019(a) provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a); *In re Woodbridge Group of Companies, LLC*, 592 B.R. 761, 772 (Bankr. D. Del. 2018) (noting bankruptcy courts may approve compromises either under Bankruptcy Rule 9019 or as part of a debtor's plan and that the standards are the same for both) (citing *inter alia* 11 U.S.C. § 1123(b)(3)(A) and § 1123(b)(6)). Compromises, such as the resolution of claims as set forth in the Plan, "are favored in bankruptcy" because they "minimize litigation and expedite the administration of a bankruptcy case." *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (citation omitted); *see also Crawford v. CIT Group/Commercial Servs. (In re Southern Hosiery Mill, Inc.)*, 2012 Bankr. LEXIS 802, at *3 (Bankr. W.D.N.C. 2012) ("It is well established that compromises are favored in bankruptcy.").

In evaluating a proposed compromise and settlement, the Court "need conduct neither an exhaustive investigation into the validity of, nor a mini-trial on, the merits of the claims sought to be compromised." *Southern Hosiery*, 2012 Bankr. LEXIS 802, at *3-4. Rather, the Court should merely examine "if the compromise is fair, reasonable, and in the best interest of the estate*." In re Louise's Inc.*, 211 B.R. 798, 801 (Bankr. D. Del. 1997); *see In re Marvel Entm't Grp., Inc.*, 222 B.R. 243, 250 (D. Del. 1998) (concluding that the proposed settlement was in the best interest of the estate). The "best interest" test requires that the proposed settlement be "fair and

equitable." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968) (analyzing settlement of claims under the Bankruptcy Act); *In re Martin*, 91 F.3d at 393; *Key3Media Grp.*, 336 B.R. at 92. In evaluating the fairness of a settlement, a court need not be convinced that the settlement is the best possible compromise, but only that the settlement "falls within the reasonable range of litigation possibilities." *In re Washington Mutual, Inc.*, 442 B.R. 314, 328 (Bankr. D. Del. 2011); *In re Coram Healthcare Corp.*, 315 B.R. 321, 330 (Bankr. D. Del. 2004); *see also In re Worldcom, Inc.*, 347 B.R. 123, 137 (Bankr. S.D.N.Y. 2006) (finding the bankruptcy court "need only 'canvass the issues' to determine if the 'settlement falls below the lowest point in the range of reasonableness'" (quoting *In re Teltronics Serv., Inc.*, 762 F.2d 185, 189 (2d Cir. 1985))).

The Bankruptcy Court has identified four factors that courts should consider in determining whether a settlement falls within the lowest point in the range of reasonableness: (a) the probability of success in litigation; (b) the likely difficulties in collection, if any; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (d) the paramount interest of the creditors. *Southern Hosiery*, 2012 Bankr. LEXIS 802 at *4 (citing *In re Martin*, 91 F.3d at 393).

In evaluating whether the proposed compromise and settlement is fair and equitable and in the best interest of all interested parties, this Court gives deference to the responsible official's judgment in agreeing to the settlement. *Maloy v. Sigmon (In re Maloy)*, 2009 Bankr. LEXIS 4010, *10 (W.D.N.C. 2009) (citing *Protective Comm.*, 390 U.S. at 424).

On appeal, the Court reviews the Bankruptcy Court's determination to approve a settlement for abuse of discretion. *See In Re Martin*, 91 F.3d at 393. If it is alleged that the bankruptcy court abused its discretionary authority, the district court may only inquire whether the bankruptcy court's decision "rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact." *Int'l Union, UAW v. Mack Trucks, Inc.*, 820 F.2d 91, 95 (3d Cir. 1987). If a Bankruptcy Court acted reasonably, carefully analyzed the issues, and reached an appropriate decision, which falls above the lowest point in the range of reasonableness, approval of a settlement is not an abuse of discretion. *Annunziata v. Putnam at Tinton Falls, LLC (In re Annunziata)*, 2018 U.S. Dist. LEXIS 32029, *17-21 (D. N.J. 2018).

Here, in the Confirmation Order, the Bankruptcy Court found that the Settlement is fair, equitable, and falls within the reasonable range of litigation possibilities. *See* Confirmation Order, 9-10. Specifically, the compromise and settlement between the Debtor and SMCC of Clubhouse Dues Litigation, the

payment of the State Court Judgment, and the dismissal of the State Court Appeal is fair and reasonable. *Id*. The likelihood of success in litigation over payment of the State Court Judgment was uncertain at best. *Id*. Even if the State Court Appeal was successful, the litigation with SMCC would be remanded to the state trial court for further proceedings on breach and/or damages, with uncertain results. *Id*. The settlement with SMCC provides a benefit to the Debtor by providing a structure through which the State Court Judgment can be paid over an extended period of time. *Id*. Additionally, there was uncertainty and risk to the Debtor regarding the outcome of the various potential disputes with SMCC in the Chapter 11 Case, including the Debtor's ability to confirm a plan of reorganization over SMCC's objection. *See* Walters' Declaration, 6-7. Therefore, the Court found that the settlement, including the dismissal of the State Court Appeal, was fair and reasonable under the circumstances. Confirmation Order, 9-10.

Appellants failed to argue that the Bankruptcy Court abused its discretion. Their brief does not address the reasons the court approved the settlement; rather, Appellants dedicate a substantial portion of their brief to re-litigating the Clubhouse Dues Litigation and State Court Judgment. But the Bankruptcy Court rejected Appellants' objections to confirmation for the specific reason that they were attempting to re-litigate those same issues, and rejected their allegations that the Plan was not fair and equitable or not proposed in good faith. *See, e.g.*, Transcript, 183:9-

11. Appellants fail to show that the Bankruptcy Court abused its discretion. To the contrary, the Bankruptcy Court acted reasonably, carefully analyzed the issues--including whether the Plan was fair and equitable to the members--and reached an appropriate decision in concluding that the settlement agreement is a practical way to pay the State Court Judgment. The Bankruptcy Court's decision certainly falls above the lowest point in the range of reasonableness, and should be affirmed.

### E. Appellants' Newly Stated Condo Lien Issue

Appellants contend that the Plan conflicts with prior state court rulings regarding the formation and ownership of the condominiums within the development. But no court has ordered the Debtor to take any action with respect to the ownership of the condominiums, and Appellants point to nothing in the record to the contrary. In the Clubhouse Dues Litigation, the Association sought "(1) a declaratory judgment stating that the form of ownership held by the Planned Community's condo unit owners is illegal under North Carolina law and (2) a reformation of the provisions of the 1999 Declaration concerning the condo units to conform with the North Carolina Condominium Act." *Smoky*, 255 N.C. App. at 240. The trial court granted CCLP's Rule 12(b)(6) motions with respect to these counterclaims, without stating its reasoning. *Id*. at 241. The Court of Appeals evaluated the provisions of the Act and "conclude[d] that the Association [was] entitled to an order declaring that the 1999 Declaration establishes a form of property ownership in the Planned

Community's condo units not recognized in North Carolina." *Id*. at 242. It therefore reversed the order of the trial court dismissing the Association's counterclaim and remanded the matter to enter judgment for the Association on this counterclaim.[9]

The Court of Appeals affirmed the trial court's dismissal of the Association's reformation counterclaim because the property owners, whose ownership interests would necessarily be affected by any reformation, were not parties to the litigation. *Id*. at 243 ("Without all necessary parties, the trial court and this Court lack the authority to decide the reformation claim." (citing *Rice v. Randolph*, 96 N.C. App. 112, 113, 384 S.E.2d 295, 297 (1989)). As such, "fil[ing] corrected documents in the public records" was not "necessary to effectuate" the Court of Appeals decision, and the Plan does not conflict with prior state court rulings regarding the condominiums. *Cf.* Appellants' Brief, 28. Further, the Plan modifications eliminated one of the two prerequisites to the release of the lien of the State Court Judgment from the condominium common elements; now, the lien's release depends only on payment by the Members of past due Clubhouse Dues. Absent the Confirmation Order, the lien would not be removed until the entire State Court Judgment had been paid or SMCC otherwise agreed. Additionally,

> Upon the release of the Judgment Lien on the Condominium Common Element, the Reorganized Debtor shall be entitled to thereafter transfer all or any portion of the Condominium

---

[9] Notably, the Court did not grant the Association's precise request to declare the form of condo ownership "illegal under North Carolina law".

> Common Elements for the beneficial interest of Owners of Condominium Units, in the Debtor's sole and absolute discretion, without need for approval of the Bankruptcy Court.

Confirmation Order, 25-26. Without the Confirmation Order, it is highly speculative whether the Debtor could obtain this permission from SMCC, which currently holds a lien on the condominium common areas by virtue of the State Court Judgment.

## CONCLUSION

Appellees request that this Court dismiss this appeal for lack of standing or waiver of the issues raised by Appellants or, in the alternative, affirm the Bankruptcy Court's Confirmation Order.

This the 30th day of March, 2020.

RAYBURN COOPER & DURHAM, P.A.

By: /s/ Ross R. Fulton
     Ross R. Fulton
     N.C. State Bar No. 31538
     John R. Miller, Jr.
     N.C. State Bar No. 28689
     Matthew L. Tomsic
     N.C. State Bar No. 52431
     Rachel M. Buck
     N.C. State Bar No. 52604
     Suite 1200, The Carillon
     227 West Trade Street
     Charlotte, NC 28202
     (704) 334-0891

*Counsel to the Debtor*

/s/ Marshall Cornblum
Marshall Cornblum, admitted *pro hac vice*
P.O. Box 217
Hayward, CA 94557

*Counsel to SMCC Clubhouse, LLC*

# CERTIFICATE OF COMPLIANCE

Attorneys for Appellees certify that this brief contains less than 13,000 words in compliance with Rule 8015 of the Federal Rules of Bankruptcy Procedure, excluding the items listed in Rule 8015(g), based on the word count in the word-processing software used to prepare the document.

This the 30th day of March, 2020.

By:  /s/ Ross R. Fulton
Ross R. Fulton

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing has been served on attorney Shira Hedgepeth by CM/ECF notice, sent automatically by the Court upon filing, and upon the *pro se* parties on this date by U.S. Mail, postage prepaid, addressed as follows:

Robert L. Young and Mary H. Young
2907 Upper Park Rd.
Orlando, FL 32814

This the 30th day of March, 2020.

By:  /s/ Ross R. Fulton
Ross R. Fulton

Case 1:19-cv-00360-MR   Document 11   Filed 03/30/20   Page 60 of 60