THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:19-cv-00360-MR

| | |
|---|---|
| IN RE: )<br>)<br>SMOKY MOUNTAIN COUNTRY )<br>CLUB PROPERTY OWNERS' )<br>ASSOCIATION, INC. )<br>_____ )<br>)<br>RONNIE C. HEDGEPETH, JR., SHIRA )<br>HEDGEPETH, ROBERT L. YOUNG, )<br>and MARY H. YOUNG, )<br>)<br>        Appellants, )<br>)<br>  vs. )<br>)<br>SMOKY MOUNTAIN COUNTRY )<br>CLUB PROPERTY OWNERS' )<br>ASSOCIATION, INC., and SMCC )<br>CLUBHOUSE, LLC, )<br>)<br>        Appellees. )<br>_____ ) | **O R D E R** |

**THIS MATTER** is before the Court on the appeal by Ronnie C. Hedgepeth, Jr., Shira Hedgepeth, Robert L. Young, and Mary H. Young of the Bankruptcy Court's December 19, 2019 Order. [BK Doc. 260].[1] The

---

[1] Citations to the record herein contain the relevant document number referenced preceded either by the letters "CV" denoting that the document is listed on the docket in Civil Case No. 1:19-cv-00360-MR or the letters "BK" denoting that the document is listed on the docket in Bankruptcy Case No. 19-10286.

Appellees move to dismiss the appeal. [CV Doc. 9].

I.  **BACKGROUND**

Smoky Mountain Country Club (the "Community") is a planned community in Swain County, North Carolina that is governed by the North Carolina Planned Community Act, N.C. Gen. Stat. § 47F-1-101 *et seq.* [BK Doc. 104 at 3]. The Community is also governed by a Declaration (the "Declaration"), which was recorded in 1999 by the developer, Conleys Creek Limited Partnership ("CCLP"), to create covenants, conditions, restrictions, and reservations of easements in the Community. [Id. at 12]. Under the Declaration, property owners in the Community (the "Property Owners") must be members of the Smoky Mountain Country Club Property Owners' Association (the "Association").[2] [BK Doc. 304-1 at 25]. The Association is the Debtor in this matter and an Appellee in this appeal. The Declaration states that CCLP will construct, manage, and operate a clubhouse, swimming pool, and two tennis courts in the Community (the "Clubhouse"). [Id. at 2]. The Declaration further states that the Property Owners shall have a perpetual nonexclusive right to use the Community's clubhouse and its amenities; that the Property Owners shall pay monthly "Clubhouse Dues" to

---

[2] The Association is incorporated as the Smoky Mountain Country Club Property Owners Association Inc. [BK Doc. 2 at 1].

the Association; and that the Association shall assess, bill, and collect the Clubhouse Dues from the Property Owners to pay those dues to CCLP. [Id. at 15-16, 23, 30-31]. On January 13, 2013, CCLP assigned its right to receive the Clubhouse Dues to SMCC Clubhouse, LLC ("SMCC"). [BK Doc. 104 at 4]. SMCC is an Appellee in this appeal.

For several years, the Association assessed, billed, and collected the Clubhouse Dues from the Property Owners. [Id.]. In 2014, the Property Owners gained control of the Association following an election of new board members. [CV Doc. 8 at 12]. In September 2014, the Association obtained legal advice that it was not obligated to assess, bill, or collect the Clubhouse Dues and sent written notice informing the Property Owners that it would "no longer bill for or collect the monthly fee for Clubhouse Dues." [Id.]. While some of the Property Owners continued to pay Clubhouse Dues directly to SMCC, others did not pay Clubhouse Dues at all. [BK Doc. 235 at 16; BK Doc. 283 at 28, 30-31].

On October 13, 2014, CCLP, SMCC, and Marshall Cornblum filed an action against the Association in the Superior Court of Swain County, asserting that the Association had breached its contract by failing to collect and pay the Clubhouse Dues. On January 26, 2016, the trial court granted the Association's motion for summary judgment on the breach of contract

3

claim. Conleys Creek Ltd. P'Ship v. Cornblum, No. 14CVS238, 2016 WL 4263835, at *1 (N.C. Super. Jan. 26, 2016).

On September 5, 2017, the North Carolina Court of Appeals reversed the trial court's judgment and remanded the case for further proceedings. Conleys Creek Ltd. P'ship v. Smoky Mountain Country Club Prop. Owners Ass'n, Inc., 255 N.C. App. 236, 805 S.E.2d 147 (2017). In that decision, the Court of Appeals concluded that there was a genuine issue of material fact as to whether the Association breached its contract. Id. While the Court of Appeals did not determine the Property Owners' obligation to pay the Clubhouse Dues because they were not parties to the suit, it noted "that homeowners within a planned community are generally obligated to respect not only real covenants governing their property, but also to pay any dues which are assessed by their association." Id. at 250, 155.

The Court of Appeals noted, however, that "the Planned Community Act does allow that when homeowners take control of an association board from the developer, the association may relieve itself of obligations made on its behalf by the developer, where it is found that the arrangement was "not bona fide or was unconscionable[.]" Id. at 245, 805 S.E.2d at 153 (citing N.C. Gen. Stat. § 47F-3-105). As such, the Court of Appeals left open the possibility on remand that the Association could void the Declaration by

4

bringing "forth evidence tending to show that the provisions in the 1999 Declaration are not 'bona fide' or are 'unconscionable.'" Id. at 250, 805 S.E.2d at 156. On March 26, 2019, the Association adopted a resolution that terminated its obligation to pay Clubhouse Dues on the grounds that the Declaration was unconscionable and was not bona fide under the Planned Community Act. [BK Doc. 283 at 81].[3]

A jury trial was subsequently conducted on the breach of contract claim. [BK Doc. 104 at 4]. The jury returned a verdict against the Association, thus impliedly finding that the Declaration was bona fide and not unconscionable. On May 31, 2019, judgment was entered against the Association on the breach of contract claim in the amount of $5,149,921.94, with an additional $1,921,132.52 in prejudgment interest (the "Judgment"). [Id. at 5]. The Association appealed.[4]

On July 26, 2019, the Association filed a bankruptcy petition pursuant to Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of North Carolina. [BK Doc. 1]. On November 18, 2019, the Association and SMCC jointly filed a proposed Plan of

---

[3] Although the Association voided the Declaration, no Court has concluded that the Declaration was unconscionable or not bona fide under the Planned Community Act.

[4] The Debtor later agreed to dismiss the Appeal as a condition of the Plan of Reorganization. [BK Doc. 253].

5

Reorganization (the "Plan") with the Bankruptcy Court, [BK Doc. 96], which was amended on December 17, 2019. [BK Doc. 253].

After a hearing on the amended proposed Plan, the Bankruptcy Court entered an Order on December 19, 2019 confirming the Amended Plan [BK Doc. 260] over the objections that had been filed by the Property Owners Robert and Mary Young and Ronnie and Shira Hedgepeth, the Appellants herein. [BK Doc. 167, BK Doc 207 at 6, BK Doc. 216 at 3-6]. Under the confirmed terms of the Amended Plan, SMCC agreed to stay execution on the Judgment and the Association agreed to: (1) assess, bill, and collect overdue Clubhouse Dues from the Property Owners; (2) assess, bill, and collect future Clubhouse Dues from the Property Owners; (3) pay SMCC $1,500,000 in three annual $500,000 payments; (4) assess each of the Property Owners for their share of the $1,500,000; (5) dismiss the appeal of the Judgment; and (6) reinstate the Declaration that the Association terminated on March 26, 2019. [CV Doc. 1-1]. The Appellants herein had objected to this Plan on the grounds that the provision calling on the Association to undertake to collect the $1,500,000 from the Property Owners subjected them to increased liability. [BK Doc. 167, BK Doc 207 at 6, BK Doc. 216 at 3-6].

On December 31, 2019, Property Owners Robert Young, Mary Young,

Ronnie Hedgepeth, and Shira Hedgepeth (the "Appellants") filed a Notice of Appeal of the Bankruptcy Court's December 19, 2019 Order confirming the Plan. [CV Doc. 1]. On March 25, 2020, the Appellees filed a "Motion to Dismiss Appeal." [CV Doc. 9].[5]

On March 26, 2020 Ronnie and Shira Hedgepeth filed a Complaint in Swain County Superior Court seeking a declaration that the Association has no right or authority to collect the Clubhouse Dues from the Property Owners. [CV Doc. 12 at 14 n.4 (citing Hedgepeth v. SMCC Clubhouse, LLC, Case No. 20-cvs-73 (N.C. Super.)].

## II. DISCUSSION

The Appellees move to dismiss this appeal on the grounds that the Appellants lack standing. [CV Doc. 9]. Only a party with standing may appeal a bankruptcy court order. In re Urban Broad. Corp., 401 F.3d 236, 243 (4th Cir. 2005). "Standing in a bankruptcy appeal is narrower than Article III

---

[5] Although the Appellants' filings are signed by Shira Hedgepeth, an attorney admitted to practice before this Court, Robert and Mary Young state that they are proceeding *"pro se."* [CV Doc. 12 at 14]. Robert and Mary Young apparently are not represented by Shira Hedgepeth or any other attorney, but they are not proceeding *pro se*. They did not file their own brief and do not appear to have done any legal work for themselves. Instead, it seems that Shira Hedgepeth included the Youngs' arguments in her brief without formally representing them. The Court admonishes the Appellants that such an arrangement is inappropriate. If the Youngs wished to appear *pro se*, they needed to file their own brief. If the Youngs wished to have Shira Hedgepeth file a brief on their behalf, she needed to file a notice of appearance on their behalf. For an attorney to "ghost write" on behalf of a party she does not formally represent is not permitted.

7

standing." In re Peoples, 764 F.3d 817, 820 (8th Cir. 2014). To appeal an order from a bankruptcy court, the appellant must "be a 'person aggrieved'—one who has been 'directly and adversely affected peculiarly'—by the bankruptcy order." Pavlock v. Sheehan, No. 1:16CV39, 2016 WL 3960505, at *4 (N.D.W. Va. June 20, 2016), report and recommendation adopted, No. 1:16CV39, 2016 WL 3963027 (N.D.W. Va. July 21, 2016) (quoting In re Urban Broadcasting Corp., 401 F.3d 236, 244 (4th Cir. 2005) (citation omitted)). "An order that diminishes one's property, increases one's burdens, or detrimentally affects one's rights has a direct and adverse pecuniary effect for bankruptcy standing purposes." Matter of Point Ctr. Fin., Inc., 890 F.3d 1188, 1191 (9th Cir. 2018) (citing In re P.R.T.C., Inc., 177 F.3d 774, 777 (9th Cir. 1999)). A mere possibility of harm does not satisfy the "persons aggrieved" standard. See Travelers Ins. Co. v. H.K. Porter Co., 45 F.3d 737, 742 (3d Cir. 1995). That standard also is not met by a mere "likelihood that an order of the Bankruptcy Court would cause an appellant to become a defendant in a separate claim . . . ." U.S. Fire Ins. Co. v. Weishorn, No. 3:08-cv-00226-MU, 2009 WL 3300040, at *3 (W.D.N.C. Oct. 13, 2009), as amended (Oct. 14, 2009) (citing Land-O-Sun Dairies, Inc. v. Pine State Creamery Co., 200 B.R. 125, 126 (E.D.N.C. 1996)). Likewise, the fact that an appellant previously attended a bankruptcy hearing and objected does

8

not qualify such person as a "person aggrieved" by a bankruptcy court's order. In re Urban Broad. Corp., 401 F.3d at 244. Without such restrictions on appellate standing for bankruptcy court orders, nothing would "prevent marginally interested parties from litigating satellite issues up and down the appellate chain while the bankruptcy case stalls out and neither creditors nor debtors receive their relief intended by the Code." In re First Cincinnati, Inc., 286 B.R. 49, 51 (6th Cir. B.A.P. 2002).

Here, the Appellants argue that they have standing because they are persons aggrieved by the Bankruptcy Court's Order, which purportedly "diminishes their property, increases their burdens, and impairs their rights" by requiring the Association to assess them for their share of the $1,500,000 and the Clubhouse Dues. [CV Doc. 12 at 8]. As such, the Appellants argue that the Bankruptcy Court's Order has a direct and adverse pecuniary effect on them. [Id.].

The Appellants' premise for their assertion of standing is not supported by the record. Whether the Appellants owe the Association for the sums that the Association is charged to collect is the subject of other litigation in another court. [CV Doc. 12 at 14 n.4 (citing Hedgepeth v. SMCC Clubhouse, LLC, Case No. 20-cvs-73 (N.C. Super.)]. As the Appellants aptly state in their opposition to the present motion to dismiss, "[n]o proper determination

has been made by either a state court or Article III federal court as to whether there exists a legal duty by Appellants to pay Clubhouse Dues." [CV Doc. 12 at 14]. Because the Appellants' obligation to pay those sums is yet to be determined, the Bankruptcy Court's Order insufficiently affects the Appellants' interest as to confer standing.

On this point, the case of Travelers Insurance Company v. H.K. Porter Company, Inc., 45 F.3d 737 (3d Cir. 1995) is instructive. In Travelers, a debtor insured by Travelers Insurance Company filed for bankruptcy. . Several creditors filed claims alleging property damage stemming from the debtor's installation of asbestos containing products on their properties. Id. at 739. As the bankruptcy proceeding progressed, some of those creditors withdrew their claims, apparently believing that it would be fruitless to pursue claims against the debtor. Id. When it later became evident that Travelers might have to respond to claims brought against the debtor, the creditors who previously had withdrawn their claims moved to reassert them. Id. at 740. The bankruptcy court granted those requests and Travelers appealed. Id.

The Third Circuit dismissed the appeal, holding that Travelers lacked standing to appeal the bankruptcy court's order because it was not a "person aggrieved" by that order. Id. The Third Circuit found that while Travelers

might face increased liability as a result of the bankruptcy court's decision to reinstate the claims, such liability was "too contingent to have been 'directly affected' by the order" because Travelers was "at least two steps removed from any possible diminution of its property." Id. at 742. Specifically, the Third Circuit highlighted that "Travelers' potential exposure is doubly removed, turning both on the success of the Claimants in their prosecution of claims against [the debtor], and on a judicial determination that the policy issued by Travelers covers the claims, a construction which Travelers strenuously rejects." Id. The Third Circuit further noted that Travelers' liability would likely be determined in subsequent litigation related to the scope of the insurance contract, which was "wholly separate from [the] bankruptcy proceedings, [and] cannot suffice to satisfy the 'directly affecting' standard for standing in bankruptcy appeals." Id. at 743, n.7. The Court also recognized that the bankruptcy court's order did not prevent Travelers from defending itself against any liability or asserting claims or defenses that it may have in any subsequent litigation. Id. at 742.

As the Third Circuit noted in Travelers, an appellant does not have standing to appeal the bankruptcy court's order merely because that order might ultimately cause them to face increased liability. Such standing only exists if an appellant's liability is not contingent on other subsequent

11

Case 1:19-cv-00360-MR   Document 16   Filed 09/21/20   Page 11 of 14

outcomes. In the present case, the Appellants' liability is entirely contingent on other subsequent outcomes. In fact, the question of whether the Appellants owe any amount to the Association is the subject of other pending litigation that was initiated by the Appellants themselves. [CV Doc. 12 at 14 n.4]. As such, the Appellants' liability for the debt in the Bankruptcy Court's Order is entirely contingent on the outcome of these subsequent proceedings, just like the insurance company's liability in <u>Travelers</u>. Moreover, the Appellants are like the insurance company in <u>Travelers</u> because they remain free to assert the same claims and defenses in those subsequent proceedings that they could have asserted if the Bankruptcy Court's Order had never been entered.[6] <u>See</u> <u>Travelers</u>, 45 F.3d at 743 ("[W]hile Travelers has an interest in defending itself against liability, it is not prevented by the bankruptcy court order from doing just that. Nor does the order prevent . . . Travelers from asserting any claims or defenses that either may have.").

Lastly, the Appellants assert that they have standing because "[b]y the Confirmation Order, the bankruptcy court . . . creates a new liability on them

---

[6] For example, the Appellants argue that they have standing in this proceeding to raise defenses based on SMCC waiving its right to collect and based on the statute of limitations. [CV Doc. 12 at 9]. Those defenses, however, are more properly asserted in the state court proceeding because that proceeding will determine the Property Owners and the Appellants' obligation to pay.

12

by imposing an ongoing obligation to pay Clubhouse Dues to the POA which did not exist as of the Petition Date," and "the Confirmation Order imposes by judicial fiat a contractual liability on the Appellants which no court has ever determined is enforceable." [CV Doc. 12 at 13].[7] The Appellants simply misread the Confirmation Order. The Bankruptcy Court confirmed the Plan based on a finding that the Association "would be likely to succeed in any litigation challenging the right to assess Members for amounts required to be paid to SMCC Clubhouse under the Plan." [CV Doc. 1-1 at 6]. This does not "create a new liability" or "impose . . . a contractual liability on the Appellants." It does not, in any way, dispose of the open question of whether the Appellants and the other Property Owners are liable to the Association. That question is left to the state court to answer in the pending litigation brought by the Appellants.

---

[7] The Appellants seem to also argue that the Association has no obligation to pay Clubhouse Dues after it terminated the Declaration in 2019. However, the Association's obligation to pay was previously determined in state court proceedings. [BK Doc. 104 at 5]. The $5,149,921.94 judgment against the Association is final. As the Bankruptcy Judge noted during the December 18, 2019 hearing, the Appellants' argument ignores the existing state court judgment and constitutes an attempt to "relitigate things that have already been litigated." [BK Doc. 283 at 183]. Bankruptcy standing exists to prevent marginally interested parties, like the Appellants, from relitigating matters that have already been, or could have been, settled in the state court proceedings. In re First Cincinnati, Inc., 286 B.R. at 51 (stating that bankruptcy standing is designed to "prevent marginally interested parties from litigating satellite issues up and down the appellate chain while the bankruptcy case stalls out and neither creditors nor debtors receive their relief intended by the Code.").

13

Case 1:19-cv-00360-MR   Document 16   Filed 09/21/20   Page 13 of 14

## IV. CONCLUSION

For these reasons, the Appellants do not have standing to appeal the Bankruptcy Court's order. Matter of Point Ctr. Fin., Inc., 890 F.3d at 1191. Accordingly, the Appellants' Notice of Appeal [CV Doc. 1] must be dismissed.

## O R D E R

**IT IS, THEREFORE, ORDERED** that the Appellees' Motion to Dismiss [CV Doc. 9] is **GRANTED**, the Appellant's appeal is **DISMISSED**, and the Clerk is directed to terminate this action.

**IT IS SO ORDERED.**

Signed: September 21, 2020

Martin Reidinger
Chief United States District Judge